JAMES H. GRAHAM (Employee) v. CITY OF HENDERSONVILLE, OAKDALE CEMETERY (Employer) and Bituminous Casualty Corporation (Carrier)

No. 7810IC971

(Filed 31 July 1979)

1. **Master and Servant § 69.3— workmen's compensation—authority to set aside compromise agreement**

    The Industrial Commission has the authority to set aside compromise settlement agreements if the settlement was obtained by fraud, misrepresentation, undue influence, duress or mutual mistake. G.S. 97-17.

2. **Master and Servant § 69.3— workmen's compensation—fraud in procuring compromise agreement**

    In an action to set aside a compromise settlement agreement on the ground that it had been procured by fraud, the evidence supported a finding by a deputy commissioner of the Industrial Commission that defendant insurer's agent represented to plaintiff that there was a serious question as to causation with knowledge that such representation was false or in reckless disregard of the veracity of such representation.

APPEAL by defendants from an Opinion and Award of the North Carolina Industrial Commission entered 12 June 1978. Heard in the Court of Appeals 27 June 1979.

On 3 April 1974, the parties entered into a compromise settlement agreement, which compensated plaintiff for loss of 50% of his big toe. On 27 June 1974, Chief Deputy Commissioner Shuford entered an order approving the settlement agreement. Thereafter, plaintiff sought to have the agreement and the order approving it set aside pursuant to G.S. 97-17 on the basis that the settlement agreement was obtained by fraud, duress, undue influence and misrepresentation, and sought to have additional benefits awarded.

PLAINTIFF'S EVIDENCE

At hearing on 27 May 1977, the plaintiff presented evidence tending to show that in 1972, he had been employed by the City of Hendersonville as a garbage collector, and as a grass cutter in Oakdale Cemetery. On 13 December 1972, he was mowing grass in the cemetery and stubbed his right great toe on a grave marker. The toe became swollen, so he cut off the top portion of his shoe. He continued working until the end of December when he con-

sulted Dr. William Lampley about the pain in his toe. Dr. Lampley's examination revealed evidence of frostbite and gangrene. On 8 January 1973, Dr. Lampley removed a necrotic area on plaintiff's great toe. In April 1973, the parties entered into an agreement for compensation for disability on the Commission's Form 21. The agreement stipulated that the plaintiff sustained an injury to his right foot by accident arising out of and in the course of his employment on 13 December 1972. The defendants agreed to pay $55.20 per week commencing on 3 January 1973. In October 1973, the parties entered into a Supplemental Memorandum of Agreement providing for 50% permanent partial disability of the right great toe commencing on 16 January 1973.

On 5 November 1973, Dr. Lampley amputated the rest of plaintiff's right great toe and also amputated his right fifth toe. On 6 February 1974 he removed the remaining toes on plaintiff's foot. Dr. Lampley completed Industrial Commission Form 25 which indicated that it would be necessary to remove the other toes. Defendant, Bituminous Casualty Corporation, received this report on 7 February 1974.

On 28 March 1974, Edward H. Tomblin, an adjuster for the Bituminous Casualty Corporation, went to plaintiff's home to discuss a compromise settlement. He returned on 3 April 1974, and plaintiff signed a Compromise Settlement Agreement which provided for payment of $966.00 plus medical payments for 50% permanent loss of plaintiff's great toe. Chief Deputy Commissioner Shuford approved the agreement in July 1974.

Plaintiff testifed that he did not remember signing the release and did not remember discussing the settlement. He was taking medicine at that time for the pain in his foot. He also testified that his glasses were broken, and he could not see through them. He had a sixth or seventh grade education and could read a little, but not without his glasses.

Plaintiff's daughter testified that plaintiff was disoriented and confused during April 1974. He would often fall asleep. Plaintiff's grandson testified that plaintiff signed the papers without his glasses on and that he acted "liked he didn't know where he was." Dr. Lampley testified that he informed plaintiff before 3 April 1974 that he may have to have his leg amputated below the knee. During the period between February and June 1974, he saw

plaintiff about 21 times. During that time plaintiff was under sedation and was, at times, disoriented, erratic and incoherent. On 11 November 1974, Dr. Lampley amputated the plaintiff's right leg above the knee.

DEFENDANT'S EVIDENCE

Edward H. Tomblin, for defendants, testified that on 3 April 1974, he read over the agreement with plaintiff; that they discussed it for about 45 minutes and that plaintiff's physical and mental condition appeared normal. On 3 April 1974, he was not aware that plaintiff's other toes had been amputated, because his file did not contain those reports. The file contained a medical report dated 23 March 1973, and a report dated 4 February 1974, indicating that the right great toe had been amputated. He informed plaintiff that "the frostbite situation was an involvement which created a dispute. I represented to him that there was a question as to whether he was entitled to receive compensation in the area of frostbite."

On 27 July 1977, Deputy Commissioner Denson filed an Opinion and Award which found as a fact and concluded as a matter of law that there was an error in the Industrial Commission's approval of the Compromise Settlement Agreement due to fraud, misrepresentation and undue influence. Deputy Commissioner Denson set aside the order of Chief Deputy Commissioner Shuford which approved the agreement, and set aside the agreement itself. The Commissioner found that plaintiff suffered permanent disability of his right leg for which defendants owed $55.20 per week for 200 weeks.

Defendants appealed to the Full Commission, which, on 12 June 1978 affirmed the Opinion and Award of Deputy Commissioner Denson.

*Prince, Youngblood, Massagee & Creekman by James E. Creekman for plaintiff appellee.*

*Uzzell and DuMont by Harry DuMont for defendant appellants.*

CLARK, Judge.

[1] Defendants first contend that the Industrial Commission had no jurisdiction, authority, or power to hold a hearing and to set

aside an order of a Commissioner approving a compromise agreement.

G.S. 97-17 provides, in pertinent part that:

". . . Provided, however, that no party to any agreement for compensation approved by the Industrial Commission shall thereafter be heard to deny the truth of the matters therein set forth, *unless it shall be made to appear to the satisfaction of the Commission that there has been error due to fraud, misrepresentation, undue influence or mutual mistake, in which event the Industrial Commission may set aside such an agreement.*" (Emphasis added).

This statutory provision clearly grants the Industrial Commission the authority to rehear and set aside prior orders approving settlements on any one of the stated grounds.

In *Pruitt v. Knight Publishing Co.*, 289 N.C. 254, 221 S.E. 2d 355 (1976), the Supreme Court set forth additional guidelines for setting aside prior orders of the Commission. In *Pruitt*, the Supreme Court stated that in order for the plaintiff to attack a settlement agreement which had been approved by the Commission, he must "make application . . . for a further hearing for that purpose. In such event, the Industrial Commission shall hear the evidence offered by the parties, find the facts with respect thereto, and upon such findings determine whether the agreement was erroneously executed due to fraud, misrepresentation, undue influence or mutual mistake. If such error is found, the Commission may set aside the agreement, G.S. 97-17, and determine whether a further award is justified and, if so, the amount thereof." 289 N.C. at 260, 221 S.E. 2d at 359. It is abundantly clear that the Industrial Commission has the authority to set aside settlement agreements if the settlement was obtained by fraud, misrepresentation, undue influence, duress or mututal mistake. Defendants' first assignment of error is overruled.

[2]   Defendants also contend that there was insufficient evidence to support the Deputy Commissioner Denson's Finding of Fact No. 27. The Deputy Commissioner found that:

"Defendants through Tomblin represented to the plaintiff that there was a controversy on the causal connection of

his amputation and his work-related injury. That representation was false as clearly indicated by medical reports sent defendants by Dr. Lampley. Tomblin made that representation either knowing it to be false or making it recklessly without due inquiry into its validity. Tomblin intended that the plaintiff rely on the representation and plaintiff did, in fact, rely on it to his detriment."

Upon review of an order of the Industrial Commission, this Court does not weigh the evidence, but determines only whether there is evidence in the record to support the finding made by the Commissioner. If there is any evidence of substance which directly or by reasonable inference tends to support the findings, the court is bound by such finding, even though there is evidence that would have supported the finding to the contrary. *Russell v. Pharr Yarns, Inc.*, 18 N.C. App. 249, 196 S.E. 2d 571 (1973).

Defendants contend, first, that the plaintiff presented insufficient evidence to support the finding that the representation that there was a serious question as to causation of plaintiff's injuries was false. We cannot agree. On 27 December 1973, Dr. Lampley conducted his initial examination of plaintiff. The plaintiff's toes had a dusky, bluish discoloration, and his foot was red and swollen. Dr. Lampley diagnosed plaintiff's injuries as frostbite. By 8 January, the plaintiff's toe had become gangrenous, and Dr. Lampley demarcated a part of the right great toe. Prior to 12 April 1973, defendants entered into an agreement for compensation in which the parties stipulated:

"2. That said employee sustained an injury by accident arising out of and in the course of said employment on the following date: (Date of Accident) December 13, 1972.

3. That the accident resulted in the following injuries: (Description of Injury) Injured right foot."

Dr. Lampley testified that the ultimate condition of plaintiff's leg was a progressive change dating back to the injury. Mr. Tomblin testified that a medical report in plaintiff's file, dated 23 March 1973, indicated that plaintiff was suffering from frostbite. On 19 October 1973, the parties filed a Supplemental Memorandum of Agreement with the Industrial Commission which compensated plaintiff for 50% partial permanent disability of his right great

toe, which had been amputated on 8 January 1973 due to frostbite and gangrene. This evidence tends to show that, at the time Tomblin represented to plaintiff that there was a serious question as to causation, the defendants had already stipulated that the injury to plaintiff's right foot, diagnosed as frostbite and gangrene, arose out of and in the course of plaintiff's employment at Oakdale Cemetery. There was, therefore, sufficient evidence to support the finding of fact by Deputy Commissioner Denson that Tomblin's statement to plaintiff was false.

Defendants, however, contend that Tomblin was not aware that the other toes had been amputated and that he believed that there was a serious dispute as to the causation of plaintiff's injuries.

The evidence for the plaintiff tends to show that Tomblin knew of the involvement of frostbite from the medical records in plaintiff's file and that he knew, or was reckless in failing to know, of the stipulation as to causation in the Settlement Agreement entered by the parties in 1973. Dr. Lampley's report, dated 4 February 1974, and received by defendant Bituminous Casualty Corporation on 7 February 1974, indicated that, due to gangrene, the plaintiff's second, third and fourth toes were scheduled for amputation. The evidence is sufficient to support Deputy Commissioner Denson's finding that Tomblin represented to plaintiff that there was a serious question as to causation knowing that it was false or in reckless disregard of its veracity.

We have carefully examined and considered defendants' other assignments of error and find them to be without merit.

Affirmed.

Chief Judge MORRIS and Judge ERWIN concur.