JAMES C. HOGAN, Employee v. CONE MILLS CORPORATION, Employer, and
LIBERTY MUTUAL INSURANCE COMPANY, Carrier

No. 480PA83

(Filed 10 December 1985)

1. **Master and Servant § 94.2— workers' compensation—order of dismissal—final adjudication for res judicata purposes**

   An order of dismissal of plaintiff's 1976 workers' compensation claim, entered at the instance of defendants, was by its terms a final adjudication of the merits for *res judicata* purposes rather than a voluntary dismissal. A reference in the order to a telephone conversation between plaintiff and the hearing officer in which plaintiff by his attorney stated that he did not object to the order dismissing the case did not make the dismissal voluntary.

2. **Master and Servant § 93; Rules of Civil Procedure § 1— inapplicability of Rules to workers' compensation proceedings**

   The Rules of Civil Procedure are not strictly applicable to proceedings under the Workers' Compensation Act.

3. **Master and Servant §§ 85.3, 94.3— workers' compensation—power of Commission to set aside former judgment**

   The Industrial Commission has inherent power, analogous to that conferred on courts by N.C.G.S. 1A-1, Rule 60(b)(6), in the exercise of supervision over its own judgments to set aside a former judgment when the paramount interest in achieving a just and proper determination of a claim requires it. N. C. Const. art. IV, §§ 1, 3.

4. **Master and Servant § 94.2— workers' compensation—relief from former judgment—failure to make motion**

   Plaintiff is not barred from relief from a 1977 judgment dismissing his workers' compensation claim because he never filed a motion with the Industrial Commission seeking such relief where the Commission awarded plaintiff compensation in his 1980 action and he had no reason to petition the Commission to set aside the 1977 judgment; no opportunity to obtain relief from the 1977 judgment arose until defendants appealed the 1980 award; and when the opportunity did arise, plaintiff asked the Court of Appeals for relief from the 1977 judgment should it find the 1980 award was barred by *res judicata*.

5. **Master and Servant § 94.3— workers' compensation—setting aside former judgment—remand to Commission**

   There were sufficient facts in the record to warrant a remand of this case to the Industrial Commission in order for it to consider whether to set aside its 1977 judgment. dismissing plaintiff's workers' compensation claim for byssinosis where plaintiff presented evidence tending to show that plaintiff believed the 1977 dismissal of his claim was without prejudice to his right to refile his claim and that his attorney acted without authority when he did not contest the 1977 order dismissing his claim with prejudice.

---

Hogan v. Cone Mills Corp.

---

**6. Master and Servant § 68— workers' compensation—byssinosis—judgment denying claim not altered by session law**

The legislature cannot by enacting 1979 N. C. Sess. Laws ch. 1305 retroactively alter a 1977 judgment of the Industrial Commission that plaintiff had no claim to compensation for byssinosis. Therefore, if the Industrial Commission declines to set aside its 1977 judgment, ch. 1305 will not redeem plaintiff's claim from the bar of *res judicata.*

**7. Master and Servant § 68— workers' compensation—byssinosis—statute of limitations**

If the Industrial Commission decides to set aside its 1977 judgment dismissing plaintiff's 1976 compensation claim for byssinosis, it will then be in a position to reconsider on the merits plaintiff's 1976 claim which was timely filed within two years after he was informed in 1976 that he had byssinosis. However, if plaintiff must rely on his 1980 claim to compensation for byssinosis, the claim is barred by the two-year period set forth in N.C.G.S. 97-58(c).

Justice BILLINGS did not participate in the consideration or decision of this case.

APPEAL by plaintiff under N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 63 N.C. App. 439, 305 S.E. 2d 213 (1983), reversing a decision of the Industrial Commission.

*Boone, Higgins, Chastain and Cone by Peter Chastain for plaintiff appellant.*

*Smith, Moore, Smith, Schell and Hunter by J. Donald Cowan, Jr., and Caroline Hudson for defendant appellees.*

EXUM, Justice.

This is a workers' compensation claim filed in 1980 by plaintiff appellant James C. Hogan for total disability caused by long exposure to cotton dust in the employ of defendant Cone Mills. The Industrial Commission found claimant to be totally disabled due to byssinosis and awarded him compensation. The Court of Appeals reversed on three grounds: (1) This action, initiated in 1980, was filed more than two years after claimant became disabled in 1976; (2) the summary dismissal of an earlier claim filed by Hogan in 1976 seeking relief on the same facts barred this 1980 claim under the doctrine of *res judicata* and (3) Hogan should not be granted relief from the former dismissal of his claim under N.C. R. Civ. P. 60(b)(6) because he never filed a Rule 60(b)(6) mo-

tion and Rule 60(b) is not a substitute for appellate review. We agree with the first two conclusions of the Court of Appeals but with respect to its third conclusion hold: (1) The Commission has inherent power, analogous to that conferred on courts by Rule 60(b)(6), in the exercise of supervision over its own judgments to set aside a former judgment when the paramount interest in achieving a just and proper determination of a claim requires it; (2) there are sufficient facts in the record to warrant a remand of this case to the Commission in order for it to consider whether to set aside its former judgment; (3) Hogan's claim may be entitled to prevail on the merits; and (4) this case should be remanded to the Commission in order for it to consider whether to set aside its former judgment dismissing Hogan's claim.

I.

Appellant Hogan worked for appellee Cone Mills Corporation from 1932 to 1959 either in the card or slashing room, both of which were dusty. Cone Mills is a textile corporation and the Minneola Plant of that company, where Hogan worked, runs 100 percent cotton. Hogan was continuously exposed to cotton dust. He left Cone on his doctor's advice due to breathing problems in 1959.

Hogan took a vocational rehabilitation course and began working for J. P. Stevens in 1962 as an operator of a small printing press, a job which did not contribute to his pulmonary impairment. He stopped working there in 1975 after his production dropped because he tired easily. In February 1976 Dr. Herbert O. Sieker informed Hogan that he suffered from byssinosis and was totally and permanently disabled from all but the most sedentary types of employment. On 12 August 1976 Hogan filed a claim with the Industrial Commission which was calendared for hearing on 19 January 1977. The hearing officer assigned to Hogan's case, Deputy Commissioner Richard B. Conely, wrote Hogan's former attorney on 8 December 1976 and inquired whether plaintiff's last injurious exposure to cotton dust was before 1 July 1963. He advised that Hogan would not be entitled to compensation for byssinosis if he was last exposed before that date and attached an opinion and award in which he denied compensation in another case on those grounds.

In 1976 a commonly held but erroneous interpretation of the law which permits compensation for byssinosis, N.C.G.S. § 97-53 (13), was that it had no application to claimants last injuriously exposed to cotton dust before 1 July 1963. In 1959 when Hogan stopped working for Cone Mills, N.C.G.S. § 97-53(13) defined occupational disease as the following:

> Infection or inflammation of the skin or eyes or other external contact surfaces or oral or nasal cavities due to irritating oils, cutting compounds, chemical dust, liquids, fumes, gases or vapors, and any other materials or substances.

1935 N.C. Public Laws ch. 123, *as amended by* 1957 N.C. Sess. Laws ch. 1396, § 6, *quoted in Wood v. Stevens & Co.*, 297 N.C. 636, 642, 256 S.E. 2d 692, 697 (1979). The legislature amended N.C.G.S. § 97-53(13) in 1963 to include infections or inflammations of "any other internal or external organ or organs of the body." 1963 N.C. Sess. Laws ch. 965, § 1. This amendment applied only to cases in which "the last exposure in an occupation subject to the hazards of such disease occurred on or after July 1, 1963." *Id.; Wood*, 297 N.C. at 642-43, 256 S.E. 2d at 697. In 1971 the legislature amended N.C.G.S. § 97-53(13) to its present form, which defines occupational disease as:

> Any disease, other than hearing loss covered in another subdivision of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

The 1971 amendment applies to all "cases originating on and after July 1, 1971." 1971 N.C. Sess. Laws ch. 547, § 3. Unlike the 1963 amendment, it was not limited to cases in which the "last exposure" to disease occurred after its effective date but to cases "originating" after such date.

The Industrial Commission interpreted the date a case "originated" as the date an employee's medical case arose or the date an employee contracted disease. A person last injuriously exposed before 1963 was deemed to have contracted disease before 1 July 1971. *Wood v. Stevens & Co.*, 297 N.C. 636, 256 S.E. 2d 692. Under

the Commission's interpretation of N.C.G.S. § 97-53(13), then, neither the 1971 nor the 1963 amendments would apply to persons exposed before 1963. That person's claim was governed by the 1958 version of N.C.G.S. § 97-53(13) which the Commission in 1976 interpreted to provide no compensation for byssinosis.[1]

In 1979 we concluded these interpretations of N.C.G.S. § 97-53(13) were erroneous. *Wood v. Stevens & Co.*, 297 N.C. 636, 256 S.E. 2d 692. The claimant in *Wood* brought an action for compensation alleging total disability as a result of exposure to cotton dust. She was last exposed to cotton dust before 1 July 1963 and suffered total permanent disability as of 12 November 1975. *Id.* at 638, 256 S.E. 2d at 694. Both the Commission and a divided panel of the Court of Appeals (Judge, now Justice, Mitchell dissenting) concluded, under the same interpretation of the occupational disease statute, N.C.G.S. § 97-53(13), as employed here by Deputy Commissioner Conely, that the 1958 version applied to Wood's claim; under it byssinosis was not compensable as an occupational disease. Former Chief Justice Sharp, writing for the Court, explained that under the 1971 legislation a case originates when the claim arises. The claim arises when the employee becomes disabled. "Under our Workmen's Compensation Act injury resulting from occupational disease is compensable only when it leads to disablement. N.C.G.S. § 97-52. Until that time the employee has no cause of action and the employer had no liability." *Id.* at 644, 256 S.E. 2d at 697. The Court in *Wood* held that the "current [1971] version of N.C.G.S. § 97-53(13) applies to all claims for disablement in which the disability occurs after the statute's effective date, 1 July 1971." *Id.* The Court reversed and remanded the case to permit the Commission to determine when Wood's disability occurred.

In 1976 when Deputy Commissioner Conely had Hogan's claim before him, he did not have the benefit of our decision in *Wood.* His letter inquiring of the date of Hogan's last injurious exposure stemmed from the then prevailing interpretation of the law that persons last exposed before 1963 were not entitled to

---

1. *Taylor v. Cone Mills*, 306 N.C. 314, 293 S.E. 2d 189 (1982), which held that inflammation of the respiratory surfaces of the lungs from cotton dust exposure could be inflammation of an "external contact surface" within the meaning of the 1958 version of N.C.G.S. § 97-53(13), was not decided until 1982.

compensation. After Deputy Commissioner Conely inquired of the date of Hogan's last exposure to cotton dust, defendants moved on 13 December 1976 to dismiss the claim on the ground that Hogan was last exposed in 1959.

Hogan's attorney informed Deputy Commissioner Conely by letter dated 28 December 1976 that the date of Hogan's last injurious exposure to cotton dust was before 1963. The letter by Hogan's attorney went on to say:

> I have discussed your letter and the accompanying portion of an opinion and award which you forwarded to me along with your letter of December 8, 1976, with Mr. Hogan, and in doing so, have informed him that the opinion forwarded seemed to control in regard to his case and would appear to terminate any claim he might have regarding this matter. . . .

Deputy Commissioner Conely had a telephone conversation with Hogan's attorney on 3 January 1977 in which Hogan's attorney told Conely that Hogan did not intend to pursue his claim and would not object to dismissal of his case. Deputy Commissioner Conely entered an order granting defendant's motion to dismiss on 4 January 1977. Hogan did not appeal from the dismissal.

There was apparently some confusion on the part of Hogan, his former attorney, or both of them, concerning the effect of Conely's order. Hogan testified he consented to dismissal of his claim in 1976 on the express condition that he would have the right to refile it. He stated:

> I filed a claim for benefits under the Workers' Compensation Act before this claim, on August 12, 1976. I'm not too positive about the date. I can't seem to remember. At that time [my former attorney] represented me in that. Commissioner Conely wrote me a letter and wrote [my attorney] a letter and said that I wasn't eligible for workmen's compensation because I left the cotton mill before 1963, and [my attorney] suggested to me that we drop it. He wasn't getting anything out of it and he was just going to drop it, and he wanted me to sign a letter to that effect. I refused to sign a letter. I told him the only way I would sign a letter to that effect would be the right to re-open the case at a later date, and that was the letter I signed. My case was subsequently dismissed.

. . . .

My agreement with my former attorney . . . was that he would write a letter and he would dismiss my case without prejudice to my bringing a new claim. The substance of my request was written by [him] and is explained in a letter of January 6, 1977. I consented to the letter of January 6, 1977. At that time it was my understanding that I would have the right to re-open at a later date.

In a letter dated two days after the order of dismissal, Hogan's attorney wrote Deputy Commissioner Conely to confirm the substance of their telephone conversation of 3 January 1977. The letter states:

Dear Commissioner Conely:

This letter is in regard to our phone conversation of Monday, January 3, 1977, concerning the brown lung claim with Mr. James Hogan. . . .

I have discussed this matter with Mr. Hogan and have explained to him that it is my opinion that further pursuit of this proceeding would be futile at this time. Therefore, I have been authorized by my client, Mr. Hogan, to notify you that he is willing to allow the dismissal of this case without prejudice to his initiating a new action and he reserves the right to do so at a later time. Although Mr. Hogan is willing to allow the dismissal of this case, he has informed me that he will continue to pursue this matter with the Brown Lung Association of North Carolina in their efforts to make legislative changes for the benefit of its members. Mr. Hogan asked me to re-emphasize to you that he is willing to allow the dismissal of this case so long as it does not prejudice his rights to initiate a new action should he so desire.

. . . .

The matter lay dormant until July 1980 when the Occupational Disease Section of the Industrial Commission wrote Hogan and informed him that new legislation had been enacted which allowed him "to refile" his claim. The Industrial Commission referred to 1979 N.C. Sess. Laws, ch. 1305 which provides:

An act to provide that byssinosis, known as "brown lung disease," shall be deemed an occupational disease within the meaning of G.S. § 97-53(13) for purposes of the Workmen's Compensation claims regardless of the date the disease originated.

The General Assembly of North Carolina enacts:

*Section 1.* Claims for 'brown lung' disease, which can be proved under G.S. § 97-53(13) shall be compensable regardless of the employee's date of last injurious exposure.

*Section 2.* This act is effective upon ratification.

*Section 3.* This act will expire April 30, 1981; however, this provision does not apply to any claims filed prior to April 30, 1981.

In the General Assembly read three times and ratified, this the 25th of June 1980.

Hogan filed a claim with the Commission on 19 August 1980 which was heard on 11 December of that year. Defendants moved to dismiss on the ground the claim was not filed within two years after Hogan became disabled as required by N.C.G.S. § 97-58(c). Deputy Commissioner Rich denied defendants' motion and entered an Opinion and Award finding Hogan totally disabled and awarding him compensation. The Full Commission modified his order in some respects not relevant here and affirmed. The Full Commission ruled that new life was breathed into Hogan's claim as a result of this Court's holding in *Wood* that the date of disability determines whether a claimant is entitled to compensation under N.C.G.S. § 97-53(13) and the enactment of Chapter 1305 which provides that byssinosis claims are compensable without regard to the employee's date of last injurious exposure to cotton dust.

The Court of Appeals reversed. It concluded, first, that Hogan's claim was time barred. Since Hogan became disabled on 1 February 1976 but re-filed his claim more than four years later, the Court of Appeals reasoned that his claim was not within the two-year period following disablement during which claims must be brought by N.C.G.S. § 97-58(c). The court also found that the dismissal of Hogan's first claim in 1977 was *res judicata* as to his 1980 claim. Finally, the court held Hogan could not have the 1977

judgment against him set aside under N.C. R. Civ. P. 60(b)(6) because Hogan never filed a Rule 60(b)(6) motion and was improperly attempting to use that rule as a substitute for appellate review of the earlier dismissal of his claim. Believing the Court of Appeals erred in its last conclusion, we vacate the decision of the Court of Appeals and remand the case to the Industrial Commission for further proceedings.

## II.

### A.

[1]   The Court of Appeals enunciated the doctrine of *res judicata* concisely as follows:

> The essential elements of *res judicata* are: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits."

*Hogan v. Cone Mills Corp.*, 63 N.C. App. 439, 442, 305 S.E. 2d 213, 215 (1983) (citations in original omitted). Hogan argues that the first essential element of *res judicata* is lacking because the dismissal of his 1976 claim was in the nature of a voluntary dismissal and not a final adjudication of the merits.

The order dismissing plaintiff's claim provided:

> On December 13, 1976, counsel for defendants filed a motion to dismiss on the basis that the disease byssinosis was not a listed occupational disease during the period of plaintiff's exposure to the hazards thereof.
>
>      . . . .
>
>      By letter dated January 28, 1976, counsel for plaintiff advised the Commission that plaintiff's last injurious exposure to the hazards of byssinosis was prior to 1963 and that there appears to be no valid response to the motion propounded by the defendants. Counsel further advised the Commission by telephone on January 3, 1977, that plaintiff does not intend to pursue this claim further and does not object to the Commission's entering an order dismissing this claim.
>
>      . . . .

IT IS, THEREFORE, ORDERED that defendants' motion is hereby granted and this matter is DISMISSED.

Each side shall bear its own costs.

This the 4th day of January, 1977.

s/ RICHARD B. CONELY
Deputy Commissioner

The dismissal followed not plaintiff's, but defendants' motion to dismiss. The order states "IT IS, THEREFORE, ORDERED that defendants' motion is hereby granted and this matter is DISMISSED." An order of dismissal granted at the instance of a party's opponent does not seem to us "voluntary." By its very terms the order was a final dismissal of Hogan's claim on the merits.

Plaintiff argues that the reference in the order to a telephone conversation between plaintiff and Deputy Commissioner Conely in which plaintiff by his attorney stated he did not object to the order dismissing the case makes the dismissal voluntary. This conversation ensued after plaintiff's counsel sent a letter to Deputy Commissioner Conely informing him that the interpretation of compensation law prevailing then "would appear to terminate any claim he might have regarding this matter" and there was no "valid response, on the part of Mr. Hogan, to the motion propounded" by defendants. It appears to us the reason plaintiff did not contest defendants' motion to dismiss is because he decided he did not have a viable claim under the law then in effect. That plaintiff determined for whatever reason not to oppose defendants' motion does not transform what is otherwise a dismissal on the merits into a voluntary dismissal.

B.

Hogan contends that if the Industrial Commission erred in ruling that Deputy Commissioner Conely's order was not a final judgment on the merits, N.C. R. Civ. P. 60(b)(6) should afford plaintiff relief from the operation of that judgment. Rule 60(b)(6) provides:

On motion and upon such terms as are just, the Court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:

. . . .

(6) Any other reason justifying relief from the operation of the judgment.

Defendant argues that Rule 60(b)(6) is not applicable to proceedings before the Industrial Commission under the Workers' Compensation Act.

[2, 3]   The Rules of Civil Procedure are not strictly applicable to proceedings under the Workers' Compensation Act, *see* N.C. R. Civ. P. 1, and we find no counterpart to Rule 60(b)(6) in the Act or the Rules of the Industrial Commission. We believe the Industrial Commission, nevertheless, has inherent power to set aside one of its former judgments. Although this power is analogous to that conferred upon the courts by N.C. R. Civ. P. 60(b)(6), it arises from a different source. We conclude the statutes creating the Industrial Commission have by implication clothed the Commission with the power to provide this remedy, a remedy related to that traditionally available at common law and equity[2] and codified by Rule 60(b). This power inheres in the judicial power conferred on the Commission by the legislature and is necessary to enable the Commission to supervise its own judgments.

Although the Industrial Commission is not a court with general implied jurisdiction, it is clothed with such implied power as is necessary to perform the duties required of it by the law which it administers. *Barber v. Minges*, 223 N.C. 213, 25 S.E. 2d 837 (1943). Although it primarily is an administrative agency of the state, charged with the duty of administering the provisions of the Workers' Compensation Act "in hearing and determining facts upon which the rights and liabilities of employers and employees depend, it exercises certain judicial functions to which

---

2. This remedy was available by the common law writs of *audita querela, coram nobis* and the equitable bill of review or bill in the nature of a bill of review. These kinds of writs and bills were not substitutes for appeal but were available to challenge judgments because of matters extraneous to the record. *State v. Green*, 277 N.C. 188, 176 S.E. 2d 756 (1970), *overruled on other grounds, Dantzie v. State*, 279 N.C. 212, 182 S.E. 2d 563 (1971); *In re Taylor*, 230 N.C. 566, 53 S.E. 2d 857 (1949). Although Fed. R. Civ. P. 60(b) expressly abolishes these writs and bills in federal courts, there is no comparable language in N.C. R. Civ. P. 60(b). The Court of Appeals has said our Rule does not abolish these writs and bills. *Baylor v. Brown*, 46 N.C. App. 664, 266 S.E. 2d 9 (1980). For a discussion of these remedies, *see* 7 Moore's Federal Practice § 60.12 at 60-82 (2d ed. 1985).

appertain the rules of orderly procedure essential to the due administration of justice according to law." *Tindall v. Furniture Co.,* 216 N.C. 306, 312, 4 S.E. 2d 894, 897 (1939). When it hears a matter in dispute, "the Commission is constituted a special or limited tribunal, and is invested with certain judicial functions, and possesses the powers and incidents of a court, within the provisions of the act, and necessary to determine the rights and liabilities of employees and employers." *Hanks v. Utilities Co.,* 210 N.C. 312, 319-20, 186 S.E. 252, 257 (1936).

From the foregoing authorities, it is apparent that the Industrial Commission possesses such judicial power as is necessary to administer the Workers' Compensation Act. This Court has held that the Commission's judicial power includes the power to set aside a former judgment on the grounds of mutual mistake, misrepresentation, or fraud. *Neal v. Clary,* 259 N.C. 163, 130 S.E. 2d 39 (1963). It also includes the power to order a rehearing on the basis of newly discovered evidence. *Butts v. Montague Bros.,* 208 N.C. 186, 179 S.E. 799 (1935).

Our cases admittedly have not always identified the source of the Industrial Commission's implied judicial powers. The search for such judicial power, however, must begin with the North Carolina Constitution which provides that:

Section 1. Judicial power.

The judicial power of the State shall, except as provided in Section 3 of this Article, be vested in a Court for the Trial of Impeachments and in a General Court of Justice. The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction that rightfully pertains to it as a co-ordinate department of the government, nor shall it establish or authorize any courts other than as permitted by this Article.

. . . .

Section 3. Judicial powers of administrative agencies.

The General Assembly may vest in administrative agencies established pursuant to law such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created. Appeals

from administrative agencies shall be to the General Court of Justice.

N.C. Const. art. IV, §§ 1, 3. The Constitution is not an independent grant of judicial power to the Industrial Commission. It requires the General Assembly to implement by legislative enactment the judicial power it authorizes for the Commission.

Our cases have found in various statutes an intent by the legislature to vest the Commission with judicial power. In *Hanks v. Utilities Co.*, 210 N.C. 312, 186 S.E. 252 (1936), the Industrial Commission's judicial power to administer the Workers' Compensation Act was derived from N.C.G.S. §§ 97-47, -48. Those statutes provide that if an employer and employee fail to reach agreement in fourteen days, either party may apply to the Industrial Commission for a hearing in regard to the matters at issue. The Commission must then set a hearing date and determine the dispute in a summary manner.

In *Butts v. Montague Bros.*, 208 N.C. 186, 179 S.E. 799 (1935), the Court traced the Industrial Commission's power to grant a rehearing on the basis of newly discovered evidence to provisions of the Workers' Compensation Act which permit the Commission to set aside an award previously made due to changed conditions, N.C.G.S. § 97-47, and its power to make rules not inconsistent with the Act, N.C.G.S. § 97-80. These provisions show "it was the purpose of the General Assembly that the Industrial Commission should have a continuing jurisdiction of all proceedings begun before the Commission for compensation in accordance with its terms." *Id.* at 288, 179 S.E. at 801.

The source of the Industrial Commission's power to set aside a former judgment on the basis of fraud, misrepresentation or mistake was not specified in *Neal v. Clary*, 259 N.C. 163, 130 S.E. 2d 39 (1953). We believe, however, that such power derives from the Commission's supervisory power over its judgments.

The power to provide relief against the operation of a former judgment is an integral part of the judicial power. Such power is a remedy fashioned by courts to relieve hardships which from time to time arise from a fast and hard adherence to the usual rule that judgments should not be disturbed once entered. The remedy has been characterized by a flexibility which enables it to

be applied in new situations to avoid the particular injustices inherent in them. Because the power to set aside a former judgment is vital to the proper functioning of the judiciary, we believe the legislature impliedly vested such power in the Commission in conjunction with the judicial power the legislature granted it to administer the Workers' Compensation Act.[3]

Because the power to set aside a former judgment is an inherent part of a tribunal's supervisory power over its judgments, the proper tribunal in which a party initially should seek relief from a former judgment is that tribunal which rendered the judgment.

[4] Defendants argue Hogan is not entitled to relief from the 1977 judgment dismissing his claim because he never filed a motion with the Industrial Commission seeking such relief. The Commission awarded Hogan compensation when he initiated this action in 1980. He had no reason to petition the Commission to set aside its 1977 judgment dismissing his claim. No opportunity to obtain relief from the 1977 judgment arose until defendants appealed his award. When the opportunity did arise, Hogan asked the Court of Appeals for relief from the 1977 judgment should it find the 1980 award was barred by res judicata. The Court of Appeals denied such relief stating Hogan had never filed a Rule 60(b) motion. We think the proper course is to remand this action to the Industrial Commission in order for Hogan to make and it to decide a motion to set aside the 1977 judgment dismissing his claim.

Defendants also argue Hogan is not entitled to relief from the 1977 judgment because relief from a former judgment cannot be a substitute for appeal. We agree with defendant that the Industrial Commission cannot properly set aside its judgment dismissing Hogan's claim merely because its decision proved to be erroneous as a result of a subsequent decision of this Court. The

3. The Court of Appeals has in at least one case indicated the Industrial Commission has power to relieve a party from a judgment on grounds of newly discovered evidence under Rule 60(b). See Grupen v. Furniture Industries, 28 N.C. App. 119, 220 S.E. 2d 201 (1975), disc. rev. denied, 289 N.C. 297, 227 S.E. 2d 696 (1976). Although Grupen misperceives the basis of the Commission's power, the decision correctly recognizes that the Commission possesses power to set aside one of its own judgments.

law would have no finality if disappointed claimants had the right to retry their claims after further development of the law shows that a decision barring their claims was erroneous. The remedy for these claimants is to appeal the denial of their claims.

[5]   We are not remanding this case to the Industrial Commission because its earlier judgment was erroneous in light of further development of the law but because we believe there are present in this case sufficient grounds upon which the Commission may rely to set aside its former judgment, which may be more fully developed on remand. The Commission, as noted above in *Neal v. Clary*, 259 N.C. 163, 130 S.E. 2d 39 (1953), may set aside a former judgment on the ground of fraud, misrepresentation or mistake. In the hearing below Hogan presented evidence that his former attorney acted without authority when he did not contest Deputy Commissioner Conely's order dismissing his claim with prejudice. Hogan testified:

> [M]y former attorney suggested to me that we drop [the case]. He wasn't getting anything out of it and he was just going to drop it, and he wanted me to sign a letter to that effect. I refused to sign a letter. I told him the only way I would sign a letter to that effect would be the right to reopen the case at a later date, and that was the letter I signed. My case was subsequently dismissed.

Hogan's belief that the dismissal of his claim was without prejudice to a later reopening of his claim is corroborated by a letter written by his former attorney to Deputy Commissioner Conely. The letter states:

> I have been authorized by my client, Mr. Hogan, to notify you that he is willing to allow the dismissal of this case without prejudice to his initiating a new action and he reserves the right to do so at a later time. Although Mr. Hogan is willing to allow the dismissal of this case, he has informed me that he will continue to pursue this matter with the Brown Lung Association of North Carolina in their efforts to make legislative changes for the benefit of its members. Mr. Hogan asked me to re-emphasize to you that he is willing to allow the dismissal of this case so long as it does not prejudice his rights to initiate a new action should he so desire.

Hogan's belief that he had reserved the right to initiate a new action also would explain his failure to appeal the dismissal of his claim in 1977. The Commission could find that Hogan's determined attempts to keep his case alive are all that a lay person, not schooled in the intricacies of *res judicata*, reasonably should be expected to do. We express no opinion as to whether the Commission should set aside its former judgment against Hogan. While we have mentioned certain equities which weigh in Hogan's favor, we have done so only for the purpose of justifying our remand of this case for the Commission's consideration. The decision whether to set aside the judgment rests, in the first instance, within the judgment of the Commission. If the Commission refuses to set aside the former judgment, Hogan's claim will be barred by *res judicata*. If, on the other hand, the Commission does set aside the former judgment, no final judgment on the merits will exist to bar this action under N.C.G.S. § 97-53(13).

## C.

[6]   Hogan contends that even if he is not afforded relief under the principle of Rule 60(b)(6), the doctrine of *res judicata* is not applicable as a bar to this action. Hogan contends this action arises under new legislation, 1979 N.C. Sess. Laws ch. 1305, the purpose of which is to create for byssinosis sufferers like himself a new cause of action. Because his 1980 claim under Chapter 1305 was different from the one he initially brought in 1976, he argues there is no identity of the two causes of action.[4] Even if we construe Chapter 1305 in a light most favorable to Hogan, he may not avail himself of that statute.

The doctrine of separation of powers embodied in N.C. Const. Art. IV, § 3 precludes the legislature from enacting a statute which alters a result obtained by final judicial decision before the date of the statute's enactment. *Gardner v. Gardner*, 300 N.C. 715, 268 S.E. 2d 468 (1980). In *Gardner*, the trial court rendered a judgment that under existing law venue lay properly in Wayne County and would not be transferred to Johnston County for the convenience of the parties on defendant's motion. Defendant never questioned that decision in an appeal from a judgment

---

4. Judge Eagles adopted this theory in his dissent to the majority opinion of the court below. *See Hogan v. Cone Mills*, 63 N.C. App. 439, 446-47, 305 S.E. 2d 213, 217 (1983) (Eagles, J., dissenting).

awarding plaintiff temporary alimony. While the divorce action was still pending the legislature enacted a statute which, if applied to defendant's case, established venue in Johnston County. Defendant again moved to transfer venue to Johnston County. The Court held:

> Article IV, Sec. 1 of the North Carolina Constitution vests the judicial power of the State, including the power to render judgments, in the General Court of Justice, not in the General Assembly. Under this provision, the Legislature has no authority to invade the province of the judicial department. *State v. Matthews*, 270 N.C. 35, 153 S.E. 2d 791 (1967). It follows, then, that a legislative declaration may not be given effect to alter or amend a final exercise of the courts' rightful jurisdiction. *Hospital v. Guilford County*, 221 N.C. 308, 20 S.E. 2d 332 (1942).

*Id.* at 719, 268 S.E. 2d at 471.

When Deputy Commissioner Conely ordered the dismissal of Hogan's claim, he exercised judicial power granted to the Industrial Commission by the legislature pursuant to the North Carolina Constitution. The legislature cannot by enacting Chapter 1305 retroactively alter his judgment that Hogan had no claim to compensation for byssinosis. If the Industrial Commission declines to set aside the former judgment, Chapter 1305 will not redeem Hogan's claim from the bar of *res judicata*. If the Commission does set aside its former judgment, there will be no need for claimant to invoke Chapter 1305. Assuming as it now appears of record that Hogan became disabled in 1976, his claim will be governed by the current version of G.S. 97-53(13) under the principles announced in *Wood v. Stevens & Co.*, 297 N.C. 636, 256 S.E. 2d 692 (1979).

### III.

**[7]** Defendant contends finally that this action is barred by the limitations period specified in N.C.G.S. § 97-58(c). That section provides, "The right to compensation for occupational disease shall be barred unless a claim be filed with the Industrial Commission within two years after death, disability or disablement as the case may be." N.C.G.S. § 97-58(c). In *Taylor v. Stevens & Co.*, 300 N.C. 94, 265 S.E. 2d 144 (1980), we held this period begins to

run from the time a claimant is notified by competent medical authority of the nature and work related quality of his disease. Because Hogan refiled this action in 1980, more than two years after he was informed he had byssinosis in 1976, defendant argues this action is barred by the claims period of N.C.G.S. § 97-58(c).

If Hogan must rely on his 1980 filing, defendant's position that it is time barred is correct. But if the Commission decides to set aside its former judgment, it will then be in a position to reconsider on the merits Hogan's claim filed in 1976, less than two years after he was informed by competent medical authority he suffered from byssinosis. The 1976 proceedings were timely filed within the provisions of N.C.G.S. § 97-58(c).

For all the reasons given above the judgment of the Court of Appeals is vacated and this case remanded to that court for further remand to the Industrial Commission for further proceedings consistent with this opinion.

Vacated and remanded.

Justice BILLINGS did not participate in the consideration or decision of this case.