Plaintiff appeals the denial of his motion to reopen for additional benefits a claim for an alleged compensable injury on 13 November 1989, for which awards were originally entered on a Form 21 Agreement for Compensation for a period of temporary total disability and a Form 26 Supplemental Agreement for Compensation in respect to a six percent permanent partial disability to the back, both approved by the Industrial Commission on 20 November 1991. (These documents, with their stipulations, are incorporated by reference as though fully restated herein.) The clear and convincing evidence supports the hearing Deputy's findings that these were procured by fraud, based on his evaluation of the witnesses.
N.C. Gen. Stat. § 97-17 grants the Industrial Commission the authority to set aside prior orders approving settlements on the grounds of fraud, misrepresentation, undue influence or mutual mistake. Graham v. City of Hendersonville, 42 N.C. App. 456,255 S.E.2d 795, cert. denied, 298 N.C. 568, 261 S.E.2d 121 (1979). This applies to an approved agreement between the employer and workers' compensation carrier and an employee. Buchanan v.Mitchell County, 38 N.C. App. 596, 248 S.E.2d 399 (1978), cert. denied, 296 N.C. 583, 254 S.E.2d 35 (1979). In addition to this statute, "[T]he Industrial Commission . . . has inherent power to set aside one of its former judgments. . . . [T]he statutes creating the Industrial Commission have by implication clothed the Commission with the power to provide this remedy, a remedy related to that traditionally available at common law and equity and codified by [N.C. Gen. Stat. § 1A1] Rule 60(b). This power inheres in the judicial power conferred on the Commission by the legislature and is necessary to enable the Commission to supervise its own judgments." Hogan v. Cone Mills, 315 N.C. 127, 137, 337 S.E.2d 477
(1985). The Commission has the power and the duty to "make its own records speak the truth in order to protect its own decrees from mistake of material fact and the blight of fraud." McDowell v.Town of Kure Beach, 251 N.C. 818, 824, 112 S.E.2d 390 (1960).
Plaintiff argues that defendant's motion is outside the one year limitation of N.C. Gen. Stat. § 1A-1, Rule 60(b). However, as the Hogan Court noted that the, "Rules of Civil Procedure are not strictly applicable to proceedings before the Industrial Commission under the Workers' Compensation Act," and that while the Commission's power in such matters "is analogous to that conferred upon the courts by N.C. R. Civ. P. 60(b)(6), it arises from a different source." It held that the Commission might set aside a 1977 decision on grounds first raised in 1980, based on "certain equities" in the movant's favor. Noting a workers' compensation decision of the Court of Appeals citing the one year limitation, the Supreme Court stated that the case "misperceives the basis of the Commission's power to set aside one of its own judgments." Id., at 137, 140 (ftnt. 3), 142, and 144.
In this case, the point in setting aside the prior 1991 awards is not to deny or recoup benefits due or paid under them (see Conclusion of Law 4, entered in disposition of defendants' appeal), but to remove them as a basis for awarding additional benefits, claimed in 1994, to which plaintiff would otherwise become entitled per N.C. Gen. Stat. § 97-47 by merely relating later problems to the injury, without the necessity of proving the injury's connection to the workplace. If the Commission were helpless to address fraud in these circumstances, it would create the kind of "hardship[ ] . . . from a fast and hard adherence to the usual rule" that the Hogan Court said this power was "fashioned . . . to relieve . . . ." Id., at 139.
Plaintiff also asks that defendant's motion to set aside the agreements be barred on the equitable grounds of laches. However, a seminal axiom of equity is that one "who would have equity must do equity", or as it is more generally said, must come to chancery with "clean hands". Here, plaintiff seeks to use the equitable shield as a sword, and prevent substantial justice. Consequently, he is not entitled to an equitable bar on these grounds.
In light of the foregoing, we do not need to determine whether the plaintiff's motion to reopen per N.C. Gen. Stat. § 97-47 more than two years after the last payment of compensation was timely due to defendant's failure to file the Form 28B required by N.C. Gen. Stat. §§ 97-18 and 97-92(c), and send a copy to plaintiff (as required then by Commission rule, and by N.C. Gen. Stat. § 97-18(h) after amendment in 1994). See, Gragg v. W.M.Harris Son, 54 N.C. App. 607, 284 S.E.2d 183 (1981); I.C. Rule 801 (1992).
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner, with minor amendments, as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the deputy commissioner as
STIPULATIONS
Plaintiff did not work for the defendant from 18 January 1993 through 1 February 1993 and from 21 September 1993 through 2 January 1994.
* * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 28 years old, with a date of birth of 8 January 1966. He began working for the defendant, a furniture rental company, in about October 1989, and worked for about one month. At the time of the hearing, plaintiff was working as a data entry clerk.
2. While in high school, plaintiff played in his high school band. After graduating from high school, plaintiff continued to work with the band by instructing its drum team. On Sunday, November 12, 1989 (plaintiff 23 years old), the high school band had been in a competition, and the members were cleaning the football field where it had been held. A group of about 15 band members began to play a game of tackle football. Plaintiff caught the football and was tackled by Curt LeGrand, a high school sophomore. After the tackle, plaintiff laid on the ground and said that he had hurt his back. When he stood up, he walked off the field holding his lower back. Several players taunted plaintiff to return to the game, but he said that he was too badly injured to play.
3. At this time in November 1989, plaintiff was involved in a homosexual relationship with Mike Taylor. Plaintiff and Mr. Taylor lived with plaintiff's mother and stepfather. Mr. Taylor was at the football game on 12 November 1989, and he helped plaintiff to his car. They returned to plaintiff's mother's house where plaintiff sat in a recliner and took aspirin because of low back pain. Plaintiff told Mr. Taylor and Kim Fuquay (a neighbor) that since he had no medical insurance, he was going to fake an injury at work the next day so that he could collect workers' compensation benefits for his back condition.
4. The next day, Monday, 13 November 1989, plaintiff arrived at work before any co-workers. When the manager of the store arrived, plaintiff was laying on the floor and said that he had fallen at work and hurt his back, although he had actually injured his back the day before while playing football. Plaintiff asked the manager to call his stepfather to take him to the hospital. Plaintiff's stepfather carried him to the emergency room while plaintiff laid in the back of a pick-up truck.
5. Plaintiff told his initial treating physicians that he had hurt his back in a fall at work on Monday morning, 13 November 1989. Plaintiff's family doctor referred him to Dr. H. E. Miller who prescribed conservative treatment of physical therapy and medication. Plaintiff did not improve and Dr. Miller ordered an MRI in January 1990 (two months after the football game). At this time plaintiff suffered from a large herniated nucleus pulposus at spinal level L5-S1.
6. On 12 January 1990 (two months after the football game) defendant began paying plaintiff weekly workers' compensation checks without entering into a formal agreement. The compensation would continue through November 1990, covering a period of 54 weeks, from November 1989 through November 1990. Plaintiff actually returned to work in August, 1990 at a yogurt shop, and for a period of about four months, he was both earning wages there and receiving workers' compensation benefits. In 1990, plaintiff played tennis on most weekends, and he competed in one tennis tournament in which he did quite well.
7. By 12 November 1990, Dr. Miller released plaintiff from his care, and was of the opinion that plaintiff retained a 7% permanent partial impairment of his back as a result of the injury. Dr. Price expressed a second opinion that plaintiff retained a five percent permanent partial impairment of his back. Plaintiff and defendant executed both an I.C. Form 21 agreement for compensation for a period of temporary total disability from 13 November 1989 through 26 November 1990, including the period he was earning wages beginning in August, 1990, and an I.C. Form 26 agreement for payment of permanent partial disability in respect to a 6% impairment of the back.
8. Plaintiff made false and fraudulent misrepresentations to the defendant's agent and employees to induce them to execute the above-noted agreements for compensation. These included false statements that he had injured himself in a fall at work, and that he was incapable of working and earning wages for a longer period of time than he was actually disabled. Defendants reasonably relied on those false statements, and executed the agreements in conformity with them. Plaintiff knew that the representations were false, and made them with the intention that the defendant would rely on them. Defendants were damaged by their reliance on plaintiff's false statements, through their admission of liability for the plaintiff's claim and payment of compensation for which they were not legally responsible.
9. The agreements were approved by the Industrial Commission on 21 November 1991, based on the false representations therein as to the circumstances and effect of plaintiff's injury.
10. Plaintiff claims additional benefits because of a significant change of condition. This claim to re-open his case was not filed with the Industrial Commission until 6 July 1994, more than two years after the last payment of compensation. The last compensation was paid to plaintiff on 13 December 1991, with permanent partial disability being paid in a lump sum on that date. Defendant did not file with the Industrial Commission an I.C. Form 28B Report of Compensation Paid which would have given notice to plaintiff that he had two years in which to re-open his claim due to a significant change of condition. However, plaintiff was not materially prejudiced by defendant's failure to file a Form 28B, because of actual knowledge — Dr. Miller told plaintiff that he had two years in which to ask to re-open his claim, and plaintiff was represented by counsel at the time the Industrial Commission Form 26 was signed — and because the compensation awards were fraudulently obtained and voidable.
11. The present case requires a Finding of Fact regarding the witnesses' credibility because the testimony of the witnesses is contradictory and cannot be reconciled. Plaintiff testified that he injured his ankle in the Sunday afternoon football game and that he did not fake an injury at work. Mr. Taylor testified in direct contradiction of plaintiff's claim. Mr. Taylor's credibility is called into question because plaintiff and Mr. Taylor ended their homosexual relationship in early 1991 on very acrimonious terms, which included criminal charges of harassment, and therefore, Mr. Taylor would have a motive to lie about plaintiff. However, the hearing Deputy found Mr. Taylor's testimony more credible than plaintiff's, based, in part, on the following stated grounds:
 a. The hearing Deputy had the opportunity to observe the demeanor of the witnesses as they testified, with this case being a special setting, lasting almost an entire day.
 b. Mr. Taylor's testimony is corroborated by Curt LeGrand, a disinterested witness who was not a friend with either plaintiff or Mr. Taylor. Mr. LeGrand testified that plaintiff injured his back at the football game, not his ankle.
 c. Ms. Kim Fuquay corroborated Mr. Taylor's testimony, although the hearing Deputy took into account, when weighing her testimony, that she had also had a "falling out" with plaintiff.
 d. Plaintiff represented to the insurance carrier that he was unable to work for a longer period than he was actually out of work, demonstrating that he would make a false statement in order to obtain benefits to which he was not entitled.
 e. The circumstances of the alleged work-related injury are consistent with Mr. Taylor's testimony, i.e., that plaintiff claims to have fallen at work the first thing Monday morning while no co-workers were present to witness his alleged fall.
 f. Dr. Hanley made a notation of a "reinjury" in his medical records in 1994. Plaintiff asked Dr. Hanley to alter his records by deleting this reference to a "reinjury," demonstrating that plaintiff sought to ensure that the insurance carrier would not have valid information which would cast doubt on his claim for a change of condition due to the 1989 injury.
12. Medical compensation treatment plaintiff received from and after 13 November 1989 and continuing was not made necessary as a result of a work-related injury.
13. Plaintiff did not injure himself in a work-related fall on 13 November 1989, but instead, injured himself in a football game on 12 November 1989. The present claim, based on an alleged substantial change of condition since a prior award pursuant to N.C. Gen. Stat. § 97-47, is based upon an award procured by fraudulent misrepresentations.
14. This matter was referred pursuant to N.C. Gen. Stat. § 97-88.2 shortly after the hearing before the Full Commission, and the preliminary investigation has now been completed.
* * * * * * * * * * * *
The foregoing stipulations and findings of fact engender the following
CONCLUSIONS OF LAW
1. Plaintiff did not injure himself on 13 November 1989 under compensable circumstances. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff made knowing and willful misrepresentations to fraudulently induce defendants to enter into, and the Commission to approve, agreements for compensation (I.C. Forms 21 and 26); and, therefore, defendant is entitled to have these agreements approved on 20 November 1991 SET ASIDE. N.C. Gen. Stat. § 97-17.
3. Plaintiff is not entitled to reopen an award obtained through misrepresentations. N.C. Gen. Stat. §§ 97-47; 97-17.
4. Issues concerning the right to an order requiring the repayment of compensation from a claimant are not questions bearing on the obligation to pay compensation benefits, such as are within the exclusive jurisdiction of the Industrial Commission. As the Commission does not have the power to issue such orders, that remedy must be sought in the General Court of Justice. N.C. Gen. Stat. § 97-91; Travelers Ins. Co. v. Rushing,36 N.C. App. 226, 243 S.E.2d 420 (1978).
5. The Industrial Commission may assess the whole cost of these proceedings, including reasonable fees for defendants' attorney, upon the party who has brought, prosecuted, or defended it without reasonable ground. N.C. Gen. Stat. § 97-88.1.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law the Full Commission enters the following
AWARD
1. The I.C. Form 21 Agreement for Compensation and the I.C. Form 26 Supplemental Agreement for Compensation approved by the Industrial Commission on 20 November 1991 must be, and hereby are, SET ASIDE.
2. Plaintiff's claim for additional compensation pursuant to the North Carolina Workers' Compensation Act must be, and the same hereby is, DENIED.
3. The plaintiff shall pay the costs of these proceedings, including an expert witness fee in the amount of $250.00 to Dr. Edward Hanley, Jr., and including a reasonable attorney's fee incurred by defendants in defending the claim, upon the submission of appropriate records of time, services and billings to the Commission for approval.
 S/ _________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ LAURA K. MAVRETIC COMMISSIONER
JRW:md
3/6/97