PEARSON v. C. P. BUCKNER STEEL ERECTION CO.

[126 N.C. App. 745 (1997)]

RICHARD D. PEARSON, Employee-plaintiff v. C.P. BUCKNER STEEL ERECTION COMPANY, Defendant-employer, and LIBERTY MUTUAL INSURANCE COMPANY, Defendant-carrier. CARY HEALTH CARE CENTER, INC., d/b/a CARY MANOR NURSING HOME, Intervenor

No. 96-814

(Filed 15 July 1997)

1. **Workers' Compensation § 220 (NCI4th)— medical expenses—amount exceeding Medicaid—liability of employer—subject matter jurisdiction**

The Industrial Commission had subject matter jurisdiction to decide whether an employer who had been ordered to pay reasonable and necessary medical expenses under the Workers' Compensation Act was required to pay medical providers the difference between the amount paid by Medicaid and the amount allowable under the Workers' Compensation Act even though the Commission was required to interpret state and federal Medicaid statutes.

**Am Jur 2d, Workers' Compensation § 435.**

2. **Workers' Compensation § 220 (NCI4th)— medical expenses—amount exceeding Medicaid—employer not liable**

The Industrial Commission erred in requiring defendant employer to pay health care providers for medical expenses in excess of Medicaid payments where North Carolina's Medicaid regulations, which allow for payments in excess of Medicaid, are in direct conflict with federal Medicaid law which requires states to limit their Medicaid payments to providers who accept Medicaid plus deductibles and co-payments as "payment in full." Therefore plaintiff medical providers who accepted Medicaid payments as compensation for services provided were precluded from seeking payment for amounts above what was paid by Medicaid.

**Am Jur 2d, Workers' Compensation § 435.**

3. **Workers' Compensation § 477 (NCI4th)— award result of motion by plaintiff—attorney fees improper**

The Industrial Commission erred in awarding attorney fees to plaintiff since N.C.G.S. § 97-88 allows for attorney fees to be awarded when an action is brought by the insurer and the insurer is ordered to pay or continue to pay benefits, but the opin-

ion and award in this case was a direct result of a motion made by plaintiff.

**Am Jur 2d, Workers' Compensation § 725.**

**4. Workers' Compensation § 443 (NCI4th)— notice of appeal—timely filing**

Defendants' notice of appeal was timely filed where it was filed within thirty days after the final Industrial Commission order denying defendants' motions.

**Am Jur 2d, Workers' Compensation §§ 694-699.**

Judge WYNN concurring.

Judge MARTIN, Mark D., joins in this concurring opinion.

Appeal by defendants from orders entered 19 December 1995 and 6 March 1996 by the North Carolina Industrial Commission. Heard in the Court of Appeals 20 March 1997.

*Leonard T. Jernigan, Jr., P.A., by Leonard T. Jernigan, Jr. and N. Victor Farah, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Jeffrey A. Doyle, for defendants-appellants.*

*Lore & McClearen, by R. James Lore, for intervenor-appellee.*

LEWIS, Judge.

This appeal presents a question of first impression in this state: Where an employer denies liability but is later ordered to pay reasonable and necessary medical expenses under the Workers' Compensation Act and where Medicaid has already paid a portion of those expenses, does the employer merely have to reimburse Medicaid or must it also pay those expenses authorized by the Act but not covered by Medicaid?

By opinion and award entered 7 February 1995, the Industrial Commission ("Commission") concluded that plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer, C.P. Buckner Steel Erection Company ("Buckner Steel") on 4 May 1992. The Commission ordered Buckner Steel to pay plaintiff $299.67 per week in temporary total disability payments plus "all reasonable and necessary medical expenses."

PEARSON v. C. P. BUCKNER STEEL ERECTION CO.

[126 N.C. App. 745 (1997)]

By letter dated 6 November 1995, plaintiff's attorney notified the Commission of a dispute relating to the extent of Buckner Steel's liability for plaintiff's past medical expenses. Defendants reimbursed Medicaid, which had paid a portion of plaintiff's medical expenses while liability was being determined by the Commission, but refused to pay the medical providers any amount in excess of the Medicaid payments. The Commission treated this letter as a motion for an order to require defendants to pay the medical expenses charged, i.e. the difference between the workers' compensation schedule and Medicaid.

Cary Health Care Center, Inc. ("Cary Health"), which had provided medical services to plaintiff, some of which were not paid by Medicaid, moved to intervene in the matter. By order dated 28 November 1995, the Commission allowed this motion.

The full Commission, citing *Marshall v. Poultry Ranch*, 268 N.C. 223, 150 S.E.2d 423 (1966), found and concluded that through Medicaid, "Congress intended to provide medical treatment to indigent persons but did not intend to relieve an employer of his statutory duty to provide medical treatment for his injured employees." Therefore, the Commission ordered defendant-carrier to pay Cary Health $49,883.81 for medical treatment provided and to pay all other medical providers the difference between the Medicaid amount and the amount allowable under the Workers' Compensation Act. Additionally, the Commission ordered defendant-carrier to pay costs and attorneys' fees.

Defendants moved the Commission to reconsider its order, for an evidentiary hearing and, alternatively, to amend its order. These motions were denied. Defendants appeal.

[1] Defendants first contend that the Commission lacked subject matter jurisdiction to enter the orders at issue because they dealt with matters outside the scope of the Commission's statutory authority, namely the application of state and federal Medicaid statutes. We disagree.

N.C. Gen. Stat. section 97-91 provides: "All questions arising under this Article if not settled by agreements of the parties interested therein, with the approval of the Commission, shall be determined by the Commission, except as otherwise herein provided." N.C. Gen. Stat. § 97-91 (1991). The General Assembly intended that the Commission have continuing jurisdiction of all proceedings

begun before it. *Butts v. Montague Bros.*, 208 N.C. 186, 188, 179 S.E. 799, 801 (1935). "[I]t is clothed with such implied power as is necessary to perform the duties required of it by the law which it administers." *Hogan v. Cone Mills Corp.*, 315 N.C. 127, 137, 337 S.E.2d 477, 483 (1985). Furthermore, this Court has recognized that "the Commission's continuing jurisdiction over its judgments includes the power to supervise and enforce them." *Hieb v. Howell's Child Care Center*, 123 N.C. App. 61, 68, 472 S.E.2d 208, 212, *disc. review denied*, 345 N.C. 179, 479 S.E.2d 204 (1996). The Workers' Compensation Act bestows on the Commission the authority to approve medical fees. N.C. Gen. Stat. § 97-90(a) (1996 Supp.).

Defendants recognize the fact that the Commission is vested with the power to approve charges for medical treatment, but argue that this case is controlled by *Eller v. J & S Truck Services*, 100 N.C. App. 545, 397 S.E.2d 242 (1990), *disc. review denied*, 328 N.C. 271, 400 S.E.2d 451-52 (1991). We disagree.

In *Eller*, the Commission authorized attorneys' fees for plaintiff's attorneys and directed them to be divided between the attorneys involved as they deemed appropriate. *Eller*, 100 N.C. App. at 546, 397 S.E.2d at 243. This Court held that the Commission did not have statutory authority, and therefore lacked subject matter jurisdiction, to adjudicate a dispute which later arose between the attorneys over the division of the fees. *Id.* at 548, 397 S.E.2d at 244.

Despite defendants' contentions to the contrary, we conclude that *Eller* does not apply in the present matter. This is not a situation in which two medical providers are arguing over how to split a sum granted by the Commission and are requesting the Commission's involvement. Rather, in this case, plaintiff is seeking enforcement of the Commission's earlier order awarding him reasonable and necessary medical expenses after a dispute arose over what expenses defendants must pay. G.S. 97-90 enables the Commission to approve medical expenses. The fact that the Commission was also required to interpret state and federal statutes is irrelevant. Accordingly, because the Commission was acting within its statutory mandate, we hold that it had subject matter jurisdiction to hear and decide these issues.

[2] Defendants next argue that the Commission erred by failing to rule that federal Medicaid statutes and regulations preclude their having to pay in excess of the Medicaid amount. They argue that Congress did not intend for health care providers to receive payment through Medicaid as well as seek reimbursement from third parties

because participation in the Medicaid program is restricted to health care providers who agree to accept Medicaid as payment in full. They further argue that if contradictory state law exists, it is pre-empted by federal law.

Plaintiff and intervenor argue that North Carolina Medicaid regulations entitle health care providers to receive third party payment in addition to Medicaid. They point to N.C. Admin. Code tit. 10, r. 26K.0006(e), which provides that a provider who accepts a patient as a Medicaid patient must agree to accept Medicaid payment plus any third party payment as "payment in full." They contend that this regulation does not conflict with any federal statutes or regulations. They also argue that public policy requires us to demand full payment of defendants. If not, they assert, employers will have an incentive to deny liability, let Medicaid pay and thereby reduce the amount owed by them to injured employees.

"Congress established the Medicaid program as Title XIX of the Social Security Act, 'for the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons.'" *Elliot v. N.C. Dept. of Human Resources*, 115 N.C. App. 613, 617, 446 S.E.2d 809, 812 (1994) (quoting *Harris v. McRae*, 448 U.S. 297, 65 L. Ed. 2d 784 (1980)), *aff'd per curiam*, 341 N.C. 191, 459 S.E.2d 273-74 (1995). Participation in the Medicaid program is entirely optional, however, once a state chooses to participate, it must comply with the requirements of Title XIX and the regulations of the Secretary of Health and Human Services. *Id*. North Carolina has elected to participate in the Medicaid program and has outlined its plan for medical assistance in Chapter 108A of the North Carolina General Statutes. Having chosen to participate, North Carolina must therefore comply with all federal requirements.

Defendants contend that 42 C.F.R. § 447.15 pre-empts any state regulation which allows health care providers to receive third party payments in addition to amounts paid by Medicaid. This regulation provides, "A State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual." 42 C.F.R. § 447.15 (1996). We must determine whether there is a conflict between this federal regulation, with which North Carolina must comply, and the above-mentioned state regulation.

PEARSON v. C. P. BUCKNER STEEL ERECTION CO.

[126 N.C. App. 745 (1997)]

We first note that the state regulation, N.C.A.C. 26K.0006(e), which purports to gain its authority from 42 C.F.R. § 447.15, is identical to the federal regulation but for the additional phrase "and third party payment" in the description of what constitutes "payment in full." After reading the two regulations, we conclude that they are in obvious conflict. The federal regulation requires states to limit their Medicaid programs to providers who accept Medicaid plus deductibles and co-payments as "payment in full." North Carolina's regulation expands "payment in full" to include additional funds: those from third parties. This is clearly in direct conflict with federal Medicaid law.

Plaintiff and intervenor argue that there is no conflict since the federal regulation only prevents a medical provider from seeking additional reimbursement directly from the patient, not from third parties who may be liable. However, there is no language in the regulation which limits its requirement in the manner asserted by plaintiff. We recognize that some of the cases in other jurisdictions which have applied this "payment in full" requirement have done so where the health care provider is seeking money directly from the patient, e.g., *Evanston Hosp. v. Hauck*, 1 F.3d 540 (7th Cir. 1993), *cert. denied*, 510 U.S. 1091, 127 L. Ed. 2d 215 (1994); *Palumbo v. Myers*, 197 Cal. Rptr. 214 (Cal. Ct. App. 1983). However, we disagree with plaintiff and intervenor that this is the only instance when Medicaid must be accepted as payment in full without language in the regulation to that effect. Our interpretation must be guided by plain language and its ordinary meaning. See *Correll v. Division of Social Services*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992). We cannot create limitations that are not in the text of a statute or regulation. If the Secretary of the Department of Health and Human Services had intended the result urged by plaintiff and intervenor, the regulation would have been worded accordingly. We agree with defendants that the plain meaning of the federal regulation requires health care providers who provide medical treatment and accept Medicaid to seek no further payment from *anyone*. Our regulation which provides otherwise is in conflict with federal law and that portion of it must be invalidated.

We are not persuaded by plaintiff's arguments that *Cates v. Wilson*, 321 N.C. 1, 361 S.E.2d 734 (1987), and *Marshall*, control our decision in this matter. First, since federal law mandates the result we reach today, any contrary state law would necessarily be invalid. Second, we do not find the cases applicable.

PEARSON v. C. P. BUCKNER STEEL ERECTION CO.

[126 N.C. App. 745 (1997)]

The *Cates* court was confronted with a tort action in which the issue was whether the introduction of evidence that Medicaid paid a portion of the plaintiff's medical bills was prohibited by the collateral source rule. *Cates*, 321 N.C. at 4, 361 S.E.2d at 736. The Court ruled that it was prohibited because introduction of such evidence would cause the jury to discount the plaintiff's injury and no double recovery would occur because the plaintiff was required to reimburse Medicaid. *Id.* at 5-6, 10, 361 S.E.2d at 737-38, 740. Plaintiff argues that *Cates* stands for the proposition that the obligation of responsible parties should not be reduced because Medicaid has paid. Even assuming this is true, we cannot agree that *Cates* further requires us to conclude that the health care providers who treated plaintiff are entitled to additional funds. If anything, it supports the proposition that defendants should have to pay the additional monies to plaintiff. However, such a windfall for plaintiff would not be acceptable under Workers' Compensation, which is not punitive in nature and only seeks to ensure that an employee injured at work has his or her medical expenses and some salary paid. Since *Cates* is a tort action and our tort system has many purposes inapplicable to Workers' Compensation, such as compensation for pain and suffering and possibly punitive damages, we do not find *Cates* applicable in the present matter.

In *Marshall*, the Supreme Court held that a veterans hospital could seek reimbursement from an employer who was statutorily obliged to provide medical treatment for an employee injured at work. *Marshall*, 268 N.C. at 225, 150 S.E.2d at 425. The Court reasoned that although "Congress intended to provide free hospital treatment for indigent ex-servicemen who were in need of, but were unable to pay for, hospital treatment," Congress did not intend to "relieve an employer of his statutory duty to provide medical treatment for his injured employees." *Id.* We agree that the payment of government benefits should not relieve employers of their duty to pay for medical treatment. However, due to the federal Medicaid requirement that a provider accept Medicaid as "payment in full," after an employer has repaid Medicaid, its obligation is fulfilled. *Marshall* does not require that medical providers be paid for treatment rendered over and above what they have accepted from Medicaid.

Additionally, we find no merit in plaintiff and intervenor's public policy argument that employers will be encouraged to deny claims since the Workers' Compensation Act already provides a remedy against unfounded denials. Under N.C. Gen. Stat. section 97-88.1, if

the Commission determines that "any hearing has been brought, prosecuted or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable [attorneys'] fees." N.C. Gen. Stat. § 97-88.1 (1991). The purpose of this section is to "prevent 'stubborn, unfounded litigiousness' which is inharmonious with the primary purpose of the Workers' Compensation Act to provide compensation to injured employees." *Beam v. Floyd's Creek Baptist Church*, 99 N.C. App. 767, 768, 394 S.E.2d 191, 192 (1990) (quoting *Sparks v. Mountain Breeze Restaurant & Fish House, Inc.*, 55 N.C. App. 663, 286 S.E.2d 575 (1982)). Therefore, any employer who denies liability for a clearly compensable injury hoping that Medicaid will pay can be ordered to pay the entire cost of the proceeding by the Commission. We determine this to be a sufficient deterrent to such behavior.

The plaintiff here was injured on the job with a blood alcohol level of .18. The Commission found him to be a chronic but functional alcoholic and the injury compensable. This would seem to say that one who can hold his liquor or drugs well, no matter what level of consumption, is of no danger to himself or others on the job. Does this view apply so that "chronic but functional" alcoholics should be approved for operating motor vehicles, specifically massive eighteen-wheelers and others? Clearly, this was a properly contested award, but that is not before us.

We hold that plaintiff's medical providers, including Cary Health, who accepted Medicaid payments as compensation for services provided are precluded from seeking further payment, either from plaintiff directly or indirectly from defendants through plaintiff under our Workers' Compensation Act. Accordingly, the Commission erred by requiring defendants to pay the health care providers for any treatment in excess of that paid by Medicaid.

[3] Defendants also argue that the Commission erred by awarding attorneys' fees to plaintiff. Again, we agree.

Attorneys' fees may be awarded by the Commission when the hearing or proceeding is brought by the insurer and the insurer is ordered to pay or continue to pay benefits. N.C. Gen. Stat. § 97-88 (1991). In the present case, the opinion and award ordering defendants to pay the expenses in excess of those paid by Medicaid was not the result of an appeal by the insurer. It was the direct result of a motion made by plaintiff. Therefore, an award of attorneys' fees to the plaintiff was improper.

**PEARSON v. C. P. BUCKNER STEEL ERECTION CO.**

[126 N.C. App. 745 (1997)]

Because of our holding in this matter, it is not necessary to review defendants remaining assignments of error.

[4] Finally, we address plaintiff and intervenor's cross-assignment of error. They argue that the Commission should have dismissed defendants' appeal to this Court because it was not filed within thirty days after the Commission's 7 February 1995 order, which required that they pay plaintiff's reasonable and necessary medical expenses. This argument has no merit. Defendants did not appeal the February order of the Commission. Instead, they did what they thought necessary to comply with it; they reimbursed Medicaid. The appeal to this Court is from the 19 December 1995 order, resulting from plaintiff's motion to the Commission, which directed defendants to pay the health care providers sums in excess of those paid by Medicaid and from the 6 March 1996 order, which denied their motions to reconsider, to amend the order and for a hearing. Defendants' notice of appeal was timely as it was filed within thirty days after the final Commission order denying their motions.

In summary, we reverse the Commission's opinion and award directing defendants to pay plaintiff's health care providers, including Cary Health, amounts in excess of what they received from Medicaid. As defendants have reimbursed Medicaid, their responsibility for past medical expenses as awarded by the 7 February 1995 opinion and award has been met. We further reverse the Commission's 19 December 1995 award of attorneys' fees to plaintiff and intervenor.

Reversed.

Judge WYNN concurs with separate opinion.

Judge MARTIN, Mark D. joins in this concurrence.

Judge WYNN concurring.

For the reasons expressed in the majority opinion, I agree that neither the employee nor the medical provider is entitled to be paid the difference between the amount authorized by the workers' compensation schedule and the amount paid by Medicaid. However, I write separately to address the unanswered question of whether the State of North Carolina's Medicaid Program can recover both the amount that it has paid plus the excess allowed by the Act.

PEARSON v. C. P. BUCKNER STEEL ERECTION CO.

[126 N.C. App. 745 (1997)]

Such an interpretation can be gleaned from the following passage in *Evanston Hospital v. Hauck*, 1 F.3d 540 (7th Cir. 1993):

> Congress' intent that state Medicaid agencies, not hospitals or doctors, seek reimbursement from third parties is evident in another section of the Medicaid statute that requires indigent recipients of benefits *to assign to the government whatever rights they might have in payment for medical care from other sources.* 42 U.S.C. § § 1396(a)(45) and 1396k(a). If this arrangement is not acceptable to doctors and hospitals, they should not take Medicaid money in the first instance.

*Id.* at 543 (emphasis supplied).

In my opinion, the government, in providing Medicaid to an indigent person, obtains the right to seek full reimbursement from the party legally responsible for paying the whole medical bill. Our laws permit this result in many matters such as in the assignment of rights to promissory notes which have been purchased at a discount rate. So too with the payment of medicaid to medical providers. Essentially, the medicaid program pays a discounted amount to the medical provider in exchange for providing medical services to the nation's poor and further, in exchange for the rights of the patient and medical provider to pursue claims against third parties who are legally responsible for paying the entire bill. Moreover, the contract between medical providers and the medicaid program does not involve third parties who are legally liable for an amount in excess of the medicaid payment. This interpretation prevents a windfall for third parties and further ensures that third parties will not deny claims in order to take advantage of the discounted medicaid payment.