Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence, or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. The Kemper Group is the carrier on the risk.
4. Plaintiff's average weekly wage at the time of her compensable injury to her neck and right shoulder sustained on 28 July 1986 was $461.60, yielding a compensation rate of $294.00.
5. As of the date of the Opinion and Award issued by Deputy Commissioner Ford on 7 January 1994, plaintiff had not been determined to have reached maximum medical improvement.
6. The following documents have been stipulated into evidence:
a. The Opinion and Award filed on 7 January 1994 in this action by Deputy Commissioner Richard B. Ford.
b. 1992 itemization of royalty payments by dates of issue, check stub copies attached.
c. 1993 itemization of royalty payments by dates of issue, check stub copies attached.
d. 1994 itemization of royalty payments by dates of issue, check stub copies attached.
e. 1995 itemization of royalty payments by dates of issue, check stub copies attached.
f. 1996 itemization of royalty payments by dates of issue, check stub copies attached.
g. 1992 1099 statements.
h. 1993 1099 statements
i. 1994 1099 statements
j. 1995 1099 statements
k. Bank of America "Special Notice"
l. Agreement for spousal support from 4/1/92-3/31/93, page one
m. Copy of plaintiff's 2/12/92 cashier check for $2500, payable to her matrimonial attorney
n. Credit Union 12/31/94 loan statement
o. Copies of money orders for $805.00 rent payments for May, June 1996
p. Plaintiff's 11/21/95 Responses to Defendant's Interrogatories
q. Plaintiff's 1992 1040 tax return
r. Plaintiff's 1993 1040 tax return
s. Markei bank statements 4/92-12/92; 3/93-12/93; 1/94-6/94
t. Plaintiff's bank statements 1/94-1/95
u. Plaintiff's bank statements 2/95-1/96
v. All That Glitters bank statements
w. Kemper's TTD payment printout for this claim
x. Kemper's payment printout 4/28/88
***********
Based upon all of the competent evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff suffered an admittedly compensable injury on July 28, 1986 to her head and neck and right shoulder which resulted in disablement from work on or about December 15, 1989.
2. In 1986, plaintiff wrote the lyrics to two songs for her husband, a singer. During a period of several days in 1988 and 1989, plaintiff's husband (as vocalist) recorded demonstration sound tracks for the two songs. The songs were subsequently recorded and released by a record company. Plaintiff began receiving royalty payments in 1992 for her property rights to the lyrics to these two songs.
3. On January 7, 1994, Deputy Commissioner Ford entered an Opinion and Award wherein he concluded that: (1) plaintiff sustained an injury by accident on July 28, 1986 resulting in an injury to her cervical spine and chronic pain and headaches; (2) plaintiff is entitled to temporary total disability compensation benefits from April 19, 1988 at the rate of $294.00 per week until plaintiff reaches maximum medical improvement, returns to gainful employment or until otherwise ordered by the Commission; and (3) defendants are entitled to a credit for compensation paid to plaintiff and royalties collected by plaintiff "from the musical composition in which she and her husband collaborated, subsequent to April 18, 1988 against the compensation awarded herein".
4. Neither plaintiff nor defendants appealed to the Full Commission from the Opinion and Award by Deputy Commissioner Ford and it therefore became a final order and award of the Commission.
5. The primary issue in this case is whether defendants are entitled to a credit for royalty income received by plaintiff.
6. Even though they did not appeal from Deputy Commissioner Ford's finding that plaintiff's disability began April 19, 1988, defendants subsequently unilaterally determined that plaintiff was entitled to temporary total disability beginning December 15, 1989, not April 19, 1988 and began paying temporary total disability compensation to plaintiff from December 15, 1989. Consequently, by their own conduct, defendants are estopped from asserting that plaintiff was disabled from her injury prior to December 15, 1989. Plaintiff agrees that following her injury, she worked until late December, 1989 or early January, 1990 and that she used sick leave for those intermittent days missed prior to becoming totally incapable of working.
7. Plaintiff received long term disability through a policy she purchased from June, 1990 through June, 1993. This policy provided that the insurer had a lien against workers' compensation paid to plaintiff. The plaintiff owes $20,917.00 pursuant to this lien.
8. Defendants filed a request for a hearing to determine the amount of credit they were due under the Opinion and Award of Deputy Commissioner Ford and the matter was set for hearing before Deputy Commissioner Hoag on July 8, 1996.
9. Plaintiff disputes defendants' claim of entitlement to credit for royalty payments against temporary total disability owed to her; however, since plaintiff did not appeal from the Opinion and Award by Deputy Commissioner Ford awarding defendants a credit for royalty payments, the unappealed from award of Deputy Commissioner Ford would be a final judgment on the merits if the Industrial Commission had jurisdiction to allow defendants a credit for royalty payments.
10. The Industrial Commission has no jurisdiction over earnings, investments or property rights obtained prior to an employee's disablement due to a work-related injury or prior to the time defendants' obligation to pay indemnity or wage loss compensation arises. One of the songs in question was recorded as a demonstration sound track in 1988 and the demonstration track for the second song was recorded in 1989. Plaintiff collaborated in the studio recording of both songs which took a total of several days. After the demonstration sound tracks were produced in a studio, plaintiff did not participate in shopping for and negotiating a record deal.
11. If plaintiff was disabled and receiving temporary total disability benefits from defendants during the several days she worked in the studio, collaborating with her husband, defendants would be entitled to a credit for the reasonable wage value of plaintiff's work. However, based on the greater weight of the evidence, plaintiff was still working for defendant-employer at the time she collaborated with her husband in the recording studio. The time period involved was prior to December 15, 1989. Defendants are not entitled to a credit for royalties earned on work done prior to the date of plaintiff's disability; therefore, Deputy Commissioner Ford had no jurisdiction to award defendants a credit for "property rights" acquired by plaintiff to the lyrics to the two songs prior to the date her disability began.
12. Prior to and after December 15, 1989, plaintiff owned a small jewelry making business which grew out of a hobby. The business was called "All that Glitters". Plaintiff's sporadic income from this business does not establish that she had regained the capacity to earn her pre-injury wages or any wages in the competitive labor market, but defendants are entitled to a credit against temporary total disability benefits paid for income plaintiff received from this business as a direct result of her own personal management and endeavor, as correctly found by Deputy Commissioner Ford. Plaintiff did not produce sufficient evidence from which to determine what weeks she actually earned wages from her business, or how much. Based on the Income Tax Returns computed over a 52 week period and other evidence presented, plaintiff's gross earnings before computing operating expenses were $1,686.00 in 1992 and $6,100.00 in 1993. The gross earnings from her business would not be indicative of plaintiff's personal earnings or wages from the business. The Full Commission finds that an allowance of $1,200.00 is reasonable for plaintiff's operating expenses in 1992 since she conducted the business in a hallway in her house. Based upon these reasonable allowances, plaintiff personally earned a total of $486.00 for 1992. As plaintiff's business increased she hired part-time employees to help as needed. Therefore, a reasonable allowance for business expenses in 1993 would be $4,000.00. Defendants are entitled to a credit for earnings of $486.00 for 1992 and $2,100.00 for 1993. Little weight is given to plaintiff's Income Tax Returns for All That Glitters" in computing her business expenses.
13. The royalty payments received by plaintiff after she became disabled from work on December 15, 1989 as a result of her July, 1986 injury are neither earnings, nor evidence of plaintiff's wage earning capacity since she became disabled. These royalty payments represent income from a one-time, creative collaboration or personal investment which may or may not have produced dividends.
14. If the unappealed from Opinion and Award by Deputy Commissioner Ford is enforceable, it should be enforced in its entirety and defendants would owe compensation to plaintiff from April 19, 1988 to December 15, 1989 at the weekly rate of $294.00, plus interest at 8% and a 10% penalty on the unpaid portion of the award.
15. If the royalty credit awarded to defendant by Deputy Commissioner Ford is enforceable, the royalty payments must be treated as income earned in the week of receipt of the royalty payment only, without any carry-forward or carry-back of credit for amounts paid in excess of the compensation rate in any given week. Therefore, defendants would be entitled to shorten plaintiff's period of disability by receiving credit for compensation paid to plaintiff only for the actual weeks in which a royalty payment was received. Plaintiff received royalty payments in 48 different weeks as follows:
Deposit Date Amount
 1992:
Apr. 15, $ 8,682.28
May 15, 7,418.89
May 15, 19,000.00
July 15, 8,691.44
Aug. 3, 5,598.05
Aug. 15, 4,213.84
Aug. 25, 1,462.36
Aug. 26, 267.43
Aug. 26, 346.24
Oct. 15, 100.56
Nov. 15, 5,034.52
Nov. 17, 127.01
Dec. 9, 1,733.76
Dec. 9, 133.52
1993:
Jan. 15, $ 9,858.42
Feb. 15, 1,266.84
Apr. 15, 1,217.85
Apr. 20, 174.58
Apr. 22, 1,680.21
Apr. 22, 43.81
Apr. 22, 977.27
May 15, 1,406.26
July 15, 1,509.07
July 27, 74.48
Aug. 15, 220.89
Aug. 24, 313.63
Aug. 24, 738.51
Aug. 31, 66.67
Aug. 31, 116.67
Oct. 13, 27.08
Oct. 15, 236.39
Nov. 15, 703.90
Dec. 10, 217.86
1994:
Jan. 15, $ 745.69
Feb. 15, 958.68
Apr. 15, 1,055.70
Apr. 19, 158.26
Apr. 22, 390.97
Apr. 22, 147.76
May 9, 90.38
May 15, 885.98
July 15, 897.06
Aug. 5, 156.15
Aug. 15, 261.98
Aug. 25, 322.09
Aug. 25, 159.01
Sept. 9, 133.66
Oct. 15, 276.70
Nov. 15, 715.57
Dec. 9, 47.04
1995:
Jan. 15, $ 765.88
Feb. 8, 106.84
Feb. 15, 159.65
Apr. 15, 166.90
Apr. 28, 298.34
Apr. 28, 226.41
May 15, 116.77
July 13, 44.44
Aug. 15, 197.68
Aug. 24, 18.02
Aug. 24, 75.62
Oct. 12, 56.21
Oct. 15, 205.57
Nov. 15, 500.70
Dec. 8, 41.91
Dec. 8, 47.31
1996:
Jan. 15, 1996 $ 539.61
16. Defendants would be entitled to shorten or reduce plaintiff's workers' compensation disability compensation by 48 weeks; however, plaintiff would be entitled to partial compensation during any week when her royalty income was less than her average weekly wage.
17. Plaintiff established a business in the name of Markei Publishing and opened up a business account at the bank primarily for the purpose of receiving royalty checks. Plaintiff joined a union to protect her rights to future royalty checks and also tried to sell her royalty rights.
18. Plaintiff's ownership of Markei Publishing does not establish that she had wage earning capacity after December 15, 1989, as the money received in the business account came from property rights acquired prior to December 15, 1989 and was not the result of plaintiff's active work in managing the business.
19. Plaintiff spent time traveling and making contacts during intermittent periods in 1992 to sell her royalty rights in the two songs for a lump sum. These efforts were unsuccessful. Plaintiff derived no income from these efforts, but she incurred business expenses which she claimed on her IRS tax returns. Defendants are entitled to a credit for the wage value of plaintiff's work during any week in 1992 that she worked in her business, Markei Publishing. Plaintiff's work would have a value of at least $461.60 per week for a forty hour week which amounts to $11.54 per hour. There is insufficient evidence from which to determine how many hours or over what period of time plaintiff worked in her business (Markei Publishing) trying to sell her property rights.
20. The Industrial Commission has no jurisdiction over intellectual property rights acquired by plaintiff prior to the date she became disabled, or incapable of earning wages. Deputy Commissioner Ford had no power to give defendants credit for earnings from intellectual work or property rights acquired at a time when plaintiff was working and earning her regular wages from defendant-employer. The fact that the income from plaintiff's property rights to two songs was paid to her during her disability does not change the employer's obligation to pay all compensation which is "due and payable" to plaintiff under the Workers' Compensation Act.
21. Deputy Commissioner Ford's award of a credit to defendants for royalty payments to plaintiff in this case is void and therefore unenforceable. Even if defendants' award of credit for royalty payments were enforceable, defendants would only be entitled to shorten plaintiff's period of disability for the total number of weeks in which royalty payments were actually received by plaintiff.
22. There is no evidence that plaintiff has reached maximum medical improvement or that she is no longer disabled as a result of her compensable injury. Defendants should be allowed to obtain an independent medical examination of plaintiff.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Defendants are not entitled to a credit for royalty payments made to plaintiff as a result of intellectual property rights acquired prior to the date of her disability. The portion of the prior judgment of Deputy Commissioner Ford awarding defendants credit for royalty payments made or to be made to plaintiff is hereby set aside. That portion of the prior judgment of Deputy Commissioner Ford finding and concluding that plaintiff became disabled on April 19, 1988 is also set aside. Plaintiff's correct date of disability is December 15, 1989. The Industrial Commission has the power to set aside a former judgment to correct an injustice. Hogan v. Cone Mills Corp., 315 N.C. 127;337 S.E.2d 477 (1985).
2. Even if the unappealed Opinion and Award of Deputy Commissioner Ford is enforceable, defendants are only entitled to a credit for weekly compensation benefits paid to plaintiff during each week in which plaintiff received a royalty payment with no carry forward or carry back. However, plaintiff would be entitled to temporary total disability compensation at the rate of $294.00 from April 18, 1988 until December 15, 1989, plus a ten percent (10%) penalty and interest on the unpaid award from the date of hearing before Deputy Commissioner Ford.
3. Defendants are entitled to a credit against weekly temporary total disability benefits paid for any week during which plaintiff earned income from her business, "All that Glitters". Defendants are entitled to a credit of $486.00 for 1992 and $2,100.00 for 1993.
4. Defendants have not rebutted plaintiff's presumption of continuing disability pursuant to the unappealed from award of continuing temporary total disability by Deputy Commissioner Ford. Plaintiff has not reached maximum medical improvement from her compensable injury.
5. Defendants are entitled to obtain an independent medical examination to determine plaintiff's current disability.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $294.00 per week from December 15, 1989 and continuing until further order of the Industrial Commission. Defendants shall receive a credit for all temporary total disability previously paid to plaintiff and a credit in the amount of $2,586.00 for plaintiff's earnings in her business, "All That Glitters".
2. Defendants are not entitled to a credit for royalty payments made to plaintiff.
3. Defendants shall pay all medical expenses incurred or to be incurred in the future by plaintiff when bills have been submitted and approved through procedures adopted by the Industrial Commission.
4. Defendants shall have the right to select a physician near the location of plaintiff's residence to conduct an independent medical examination of plaintiff at defendants' expense.
5. Defendants shall pay the costs of this action.
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ LAURA K. MAVRETIC COMMISSIONER
BSB:md jcb