***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award of the Deputy Commissioner with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the prior hearings, which included a Pre-Trial Agreement; the Full Commission notes that although no Pre-Trial Agreement was formally entered into in the instant case, the parties have nevertheless stipulated that the evidence in I.C. File Nos. 432839 and 506658 shall constitute the evidence for determination of this claim, and the evidence in these files and before the Full Commission include the following:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and are submitted to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the parties on the relevant dates.
3. Defendant-employer was self-insured on October 9, 1995.
4. Plaintiff's average weekly wage will be determined by an Industrial Commission Form 22 dated June 19, 1997, and stipulated into evidence in the prior case.
5. The following stipulated exhibits are admitted into evidence:
 (a) Transcript of the evidence from the hearing of August 14, 1997, including all medical records and other exhibits attached thereto;
 (b) Deposition of John L. Simpson, M. D., taken by the parties in the prior case;
 (c) Deposition of Richard A. Blasé, D.C., taken by the parties in the prior case;
 (d) Deposition of Mark W. Roy, M. D., taken by the parties in the prior case; and
 (e) The Commission takes Judicial Notice of the Industrial Commission forms and form agreements in files numbers 506658, 432839 and 740197.
6. The Commission takes Judicial Notice of the Opinion and Award of Deputy Commissioner Theresa B. Stephenson, filed February 26, 1998 in file numbers 506658 and 432839.
7. The issues to be determined are (1) whether plaintiff sustained a new compensable injury to his back or an exacerbation of his prior compensable injuries on October 9, 1995; (2) whether plaintiff's claim is barred by the Opinion and Award filed by Deputy Commissioner Stephenson; (3) whether plaintiff's being out of work after May 1996 is related to an alleged injury of October 9, 1995; (4) if so, to what, if any, benefits plaintiff is entitled; and (5) whether either party is entitled to attorney's fees.
 ***********
Based upon all the competent evidence adduced in this case, the Full Commission makes the following additional
 FINDINGS OF FACT
1. Plaintiff was previously employed by defendant-employer in various capacities, including band saw operation, drill press operation, inspections, and shipping and receiving. Defendant-employer is engaged in the fabrication of pillows and cushions to use in furniture.
2. On March 24, 1994, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant when a bun fell off the bun board and hit plaintiff between the back of his head and right shoulder. (I.C. 432839).
3. Although plaintiff did not lose any time from work as a result of his March 24, 1994 compensable injury, he did continue seeing Dr. Simpson, the company doctor, for treatment. Dr. Simpson referred plaintiff to Dr. Kritzer, a neurosurgeon, after plaintiff's continued with complaints of severe left shoulder and left arm pain and decreased range of motion. Plaintiff also later complained while treating with Dr. Blasé, a chiropractor, of some right shoulder and arm pain. Dr. Simpson ordered a MRI in April 1994, which revealed a moderate size right lateral C5-6 disc herniation causing impingement at the right C6 nerve root. This MRI report was not consistent with plaintiff's primary complaint of severe left shoulder and arm pain.
4. Surgery was not recommended, and plaintiff's pain gradually improved with conservative measures until an alleged work-related injury on September 27, 1994 where foam fell and struck plaintiff in the right side of his head.
5. After continued complaints in October 1994, of left shoulder pain, Dr. Simpson set up an appointment for plaintiff to see Dr. Tom Osteen. Plaintiff refused to see him, so Dr. Simpson set up an appointment with Dr. Harkins. It is unclear from the record whether plaintiff actually saw Dr. Harkins.
6. On January 15, 1995, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant when he slipped and fell on a wet floor in the bathroom. (I.C. 506658). Plaintiff did not sustain a blow to any part of his shoulder or back, but caught his weight on his hand. Plaintiff initially complained of pain in his left shoulder, posterior neck, low back and upper hip. Plaintiff was diagnosed with muscular strain to the left shoulder, neck and upper back pain. Dr. Simpson simply wrote "back" on plaintiff's original excuse from work.
7. The parties entered into a Form 21 Agreement with respect to this January 15, 1995 injury. The description of the injuries was simply "back pain." This agreement was approved by the Commission on March 14, 1995.
8. Plaintiff continued to treat with Dr. Simpson. Plaintiff's areas of pain were left shoulder, trapezius and left paracervical pain. Dr. Simpson referred plaintiff to physical therapy, which included cervical traction.
9. As a result of the January 15, 1995 compensable injury, plaintiff was out of work January 17, 1995 through January 30, 1995. Plaintiff returned to work at light duty as an inspector.
10. On February 6, 1995, Dr. Simpson allowed plaintiff to return to his regular job, at plaintiff's request, with the restrictions of no overhead lifting and no lifting greater than 40 pounds.
11. In June 1995, plaintiff returned to Dr. Simpson complaining of left shoulder, neck and left arm pain. Plaintiff denied any additional accident.
12. Dr. Simpson continued to treat plaintiff for his left shoulder, neck and arm pain. Dr. Simpson referred plaintiff to Dr. Yates, an orthopaedist, for consultation or treatment in August 1995, and again to Dr. Kritzer, neurosurgeon, on October 9, 1995.
13. On October 9, 1995, Dr. Simpson received a call from the company nurse, Virginia Stringer, R. N., stating that plaintiff told her he had a neck injury at work while he was bent over counting some foam. Plaintiff complained of pain in the neck and shoulder and requested to go home and use heat on it.
14. Dr. Simpson then called Dr. Kritzer, who had just seen plaintiff that day, and Dr. Kritzer advised that a recent MRI showed the cervical disc had diminished significantly that he had no explanation for the severity of the reported symptoms, and he recommended continued conservative treatment.
15. Dr. Simpson elected to send plaintiff home for the remainder of the afternoon of October 9, 1995.
16. Plaintiff's next office visit with Dr. Simpson was October 12, 1995, at which time he made his first complaint of low back pain, other than a one-time complaint on January 15, 1995. Plaintiff explained that he had jumped off his couch after getting a spasm in his neck and then felt a catch in his back. Although plaintiff showed up for the visit to the doctor with a cane and walking stooped over, plaintiff did not really use the cane for weight-bearing. Plaintiff's pain was low in the back across the sides with no radicular nature and no palpable muscle spasm.
17. October 12, 1995 was plaintiff's last visit to Dr. Simpson. On that date, plaintiff did not make further mention of the alleged incident at work three days earlier. Dr. Simpson was of the opinion that said incident was no more than a continuation of the prior compensable neck and shoulder injury of January 1995. Dr. Simpson further noted at this last office visit of October 12, 1995 that plaintiff's symptoms were "getting completely and totally out of control with little in the way of objective clinical findings."
18. From October 12, 1995 until May 15, 1996, plaintiff sought no medical treatment. During that same period, plaintiff's case was regularly monitored by Nurse Virginia Stringer, who repeatedly made it clear to plaintiff that if he was having any problems, he needed to let her know so they could get him help.
19. On five separate occasions from November 1995 until May 1996, Nurse Stringer went into the plant to speak in person with plaintiff. On each occasion, plaintiff indicated that he was performing his work without problems and had no complaints.
20. At most, the alleged incident of October 9, 1995 was a temporary aggravation of plaintiff's prior accepted neck and shoulder injury, which resulted in no lost time from work and no medical treatment from October 1995 until the May 15, 1996 claim for short term disability, which the Commission finds was for medical reasons unrelated to plaintiff's work.
21. Plaintiff continued to work for defendant as a drill press operator, and later in shipping. During May 1996, plaintiff alleged that he had a "loading accident" while moving cushions. Plaintiff did not report the incident to defendant as an accident and defendant first found out about it during plaintiff's testimony at the hearing, before the Deputy Commissioner Stephenson.
22. On May 15, 1996, plaintiff, by his choice, sought treatment from Dr. Blasé, the chiropractor who had treated him in 1994, complaining of low back pain and right leg pain, which had a gradual onset over the past three weeks. Plaintiff denied it was a workers' compensation issue and indicated a physician had not seen him for this problem. Plaintiff also indicated previous treatment in the past year had been for neck and shoulder pain.
23. Dr. Blasé performed therapy on plaintiff and, when this was unsuccessful, completed a disability certificate that plaintiff was totally incapacitated on June 5, 1996 and could return to work on October 24, 1996.
24. In June 1996, plaintiff applied for and received short-term disability benefits through an entirely company-funded disability plan, effective from May 15, 1996 for 26 weeks, the full amount under the policy. In the application, plaintiff denied his lower back disability was work-related.
25. When plaintiff's short-term disability expired, plaintiff did not return to work, on the advice of his attorney.
26. A June 20, 1996 MRI of plaintiff's lumbar spine ordered by Dr. Blasé revealed degenerative disc disease, some slight disc bulging, but no herniations or nerve root compression. Plaintiff's last treatment with Dr. Blasé was September 12, 1996.
27. On July 9, 1996, plaintiff went to Dr. Mieden, a neurologist, for his lower back pain. At that visit, plaintiff indicated that his lower back pain began suddenly while he was lifting cushions at work the end of April 1996. Dr. Mieden gave him medication and recommended an epidural steroid if the chiropractic treatment with Dr. Blasé did not help. Plaintiff only saw Dr. Mieden once.
28. In November 1996, upon a referral from his attorney, plaintiff sought treatment from Dr. Mark Roy, a neurosurgeon. Plaintiff was diagnosed with a cervical and lumbar spondylosis. Plaintiff's neurological exam was normal. Dr. Roy recommended jobs with no lifting greater than fifteen pounds on a repetitive basis, or constant lifting and bending. Dr. Roy was not provided with a complete treatment history of plaintiff or his prior medical records when he examined him. On the patient intake form, plaintiff alleged his lower back problems began after a work injury on May 3, 1996.
29. Plaintiff never returned to work for defendant after his short-term disability expired. At the time of hearing of the deputy commissioner hearing on August 14, 1997, defendant still had plaintiff on the payroll file as an employee. At that time, plaintiff had moved to Louisiana to live and had been there approximately two months. Plaintiff's family is from Louisiana.
30. There is insufficient medical evidence from which to determine by its greater weight that plaintiff's time out of work from May 1996 and continuing is causally related to plaintiff's alleged injury of October 9, 1995.
31. The greater weight of lay testimony and medical evidence in this case is that plaintiff's inability to work after May 15, 1996 is a result of a low back condition which is unrelated to his work or any injury occurring at work.
32. To the extent that plaintiff now claims that his time out of work related back to a neck or low back injury in October 1995, such claim is barred by prior Opinions and Awards that have been entered in the companion files to this claim, I.C. File Nos. 432839 and 506658. On April 11, 2000, the Full Commission found:
 "Plaintiff's complaints of lower back pain on and after 12 October 1995 did not result from plaintiff's injuries on 24 March 1994 or 16 January 1995 or from any other alleged work-related injury in April or May 1996"
and ruled:
 "Plaintiff is not entitled to compensation for total disability after May 1996 and continuing, as plaintiff's alleged disability was not caused by any work-related injury."
These conclusions were sustained on appeal by the Court of Appeals in an unpublished Opinion dated September 18, 2001, wherein the Court of Appeals expressed:
 "Our review of the record, however, demonstrates that defendants have presented substantial evidence to show plaintiff's alleged injury was not related to his previous compensable injuries.
 Plaintiff's own testimony, in fact, revealed he had told his employer the injury was not work related. Moreover, there was evidence plaintiff appeared at a doctor's office `stooped over' with a cane, but without actually using the cane. One doctor noted plaintiff's symptoms were `getting completely and totally out of control with little in the way of clinical findings.'
 Consequently, there is insufficient competent evidence to support the Commission's findings and conclusions."
Plaintiff in I.C. File No. 740197 is attempting to obtain another "bite of the apple" after his claim for the same period of disability was denied in I.C. File Nos. 432839 and 506658. As stipulated by the parties, the record from I.C. File Nos. 432839 and 506658 is the sole evidence before the Commission in this claim (I.C. File No. 740197) and the three claims concern the same period of alleged disability (commencing on or after May 15, 1996). Therefore, plaintiff's attempt in this claim (I.C. File No. 740197) to obtain disability for the time periods previously denied based on the allegation of a new date of injury is barred by the doctrines of res judicata and/or collateral estoppel. Plaintiff had full opportunity to present evidence and prosecute a claim that his disability was the result of an alleged October 9, 1995, injury when he presented his claim to the Deputy Commissioner Stephenson in I.C. File No. 432839 and 506658 in August 1997. The fact that plaintiff in this action has chosen to prosecute this claim for the same damages (period of disability) under the same record of evidence shows that his allegation that his disability results from an alleged October 1995 injury could have and should have been presented when this matter was initially presented to the deputy commissioner in August 1997. The judgment in I.C. File No. 432839 and 506658 is final, and the issue of disability after May 15, 1996 and the identity of the parties is common to those actions and this claim (I.C. File No. 740197).
33. Even if there had not been a prior adjudication of issues between the parties, the Full Commission independently finds, based upon a review of lay and medical testimony, and stipulated medical records, that the cause of plaintiff's missed work after May 15, 1996 is not related to any injury at work in October 1995 or "any [other] work-related injury."
34. As to the credibility of plaintiff, the Full Commission not only adopts the previous findings of Deputy Commissioner Stephenson, who had the only opportunity as trier of fact to judge the demeanor of plaintiff and other witnesses, but the Full Commission further finds, independent of the findings of Deputy Commissioner Stephenson, and based upon the record as a whole, including a thorough examination of the hearing transcripts, medical depositions and records, and other stipulated evidence in this case, that plaintiff's claim is not credible.
35. Plaintiff was not justified in failing to return to work after the expiration of his short-term disability in December of 1996. Whether or not the Full Commission adopts the findings of Deputy Commissioner Stephenson that plaintiff did not return to work on the advice of his attorney, the Full Commission finds that plaintiff's own medical expert, Dr. Mark Roy, examined plaintiff on November 20, 1996, and concluded that plaintiff was not a surgical candidate and that he could work as long as he avoided repetitive lifting of fifteen pounds or more and avoided regular bending and lifting. Defendant-employer had previously provided regular work to plaintiff that was within these restrictions, and such work was still available to plaintiff after the expiration of his short-term disability.
36. Neither party is entitled to attorney's fees in this action.
 ***********
The foregoing stipulations and findings of fact engender the following additional
 CONCLUSIONS OF LAW
1. Plaintiff's complaints of neck or low back pain on or after May 15, 1996 did not result from an incident at work on October 9, 1995. N.C.G.S. § 97-2(6).
2. Plaintiff is not entitled to disability compensation from May 1996 and continuing, since plaintiff's disability was not caused by any work-related injury of October 9, 1995. N.C.G.S. § 97-29.
3. Plaintiff is not entitled to medical treatment with respect to I.C. File No. 740197. N.C.G.S. §§ 97-2(6); 97-25.
4. Plaintiff's allegations that his alleged disability was caused by an alleged October 1995 injury could have and should have been presented in conjunction with the presentation of evidence in I.C. Files Nos. 432839 and 506658, and his claims for disability in this action are precluded under the doctrines of res judicata and/or collateral based on the Full Commission's prior conclusion that "Plaintiff is not entitled to compensation for total disability after May 1996 and continuing, as plaintiff's alleged disability was not caused by any work-related injury."See Hogan v. Cone Mills Corp., 326 N.C. 476, 390 S.E.2d 136 (1990); Hoganv. Cone Mills Corp., 315 N.C. 127, 337 S.E.2d 477 (1985).
4. Neither party is entitled to attorney's fees in this action.
 ***********
The foregoing stipulations, findings of fact and conclusions of law engender the following
 ORDER
1. Plaintiff's claim for compensation and further medical treatment is, and under the law must be, DENIED.
2. Each side shall bear its own costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER
RCR/gas