* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Deluca with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On December 10, 2002, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant. Defendant was self-insured and Key Risk Management Services was the third party administrator.
3. Plaintiff's average weekly wage is $592.97 which yields a compensation rate of $395.33.
4. Plaintiff continues to receive compensation for total disability.
The following documentary exhibits are stipulated into evidence by the parties:
 (a) All of plaintiff's medical records. (b) All of defendant's discovery and plaintiff's responses thereto. (c) All of plaintiff's discovery and defendant's responses thereto. (d) All Industrial Commission Forms.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-seven years old. She graduated from high school, but had no additional education or training. Plaintiff's employment history included more than twenty years of work in textile manufacturing. She also worked approximately five years for a maker of manufactured homes. Prior to beginning work for defendant-employer, plaintiff had never experienced problems with her skin or with her breathing that were associated with her employment. She had experienced psoriasis in the past, but no skin condition as severe as the conditions she experienced during and after her employment with defendant-employer.
2. Plaintiff lives in a single-family home. Her home is heated with central heating and air conditioning. She has lived in the same home for many years. She does not smoke. She has no pets. She cleans her home approximately once per week. Sometimes one of her daughters helps her to clean her home. She uses protective gloves when using chemicals to clean her home. She has no mold or mildew problems in her home.
3. Plaintiff worked for defendant-employer for approximately 7 years. During the majority of her employment by defendant-employer, plaintiff worked in the platemaking department. In the platemaking department, plaintiff was regularly exposed to a wide variety of chemicals. Defendant-employer did not provide her with protective gloves or any other protective clothing.
4. Plaintiff's employment exposed her on a regular, if not daily basis, to the following chemicals:
 Health Hazard Personal Protection
EDS Gum Finisher Aggravates Dermatitis Avoid prolonged exposure;
 Wear protective gloves 
 clothes
Developer/Replenisher Skin irritation and rash Chemical resistant gloves,
 apron or lab coat
Diamondplate developer Skin irritation, may cause Chemical resistant gloves
 Burns required
Graphic Arts Cleaner Prolonged contact may lead Chemical resistant gloves,
 to drying, irritation, and impervious clothing
 dermatitis
Film Kleen II Prolonged contact can cause Protective, impervious
 irritation, defatting and/or gloves
 dermatitis

5. In the summer of 2002, plaintiff began experiencing problems with her skin. She had swelling and severe rashes that began on her feet. The rashes spread to her hands, arms, abdomen and eventually covered almost her entire body. Initially, plaintiff's symptoms would improve over the weekends when she was away from work. However, her symptoms would immediately worsen upon returning to work.
6. In addition to plaintiff, three other employees who worked in the platemaking department developed rashes or problems with their skin during the same time frame as plaintiff.
7. As a result of her skin condition, plaintiff initially became disabled on December 10, 2002. She remained out of work until January 30, 2003, at which time she made a trial return to work for defendant-employer. Plaintiff's trial return to work was unsuccessful. On May 15, 2003, plaintiff had a severe episode of diffuse puritis and scattered rash, followed by lip and tongue swelling. As a result of this incident and her previous skin problems, defendant-employer asked plaintiff not to return to work and defendants reinstated payments of compensation for total disability.
8. On February 10, 2003, defendant-employer filed an Industrial Commission Form 60, Employer's Admission of Employee's Right to Compensation Pursuant to N.C. Gen. Stat. § 97-18(b). The Form 60 admitted that as of December 10, 2002 plaintiff was entitled to compensation for an occupational disease, to wit: "developed severe rash over the body [due] to chemicals used in the platemaking dept.". Defendants made payments of compensation to plaintiff pursuant to N.C. Gen. Stat. § 97-18(b). As of the date of the hearing, defendants continued to pay plaintiff compensation for total disability.
9. For her skin condition, plaintiff received treatment from numerous healthcare providers. All of the treatment received by plaintiff tended to affect a cure, provide relief or to lessen plaintiff's period of disability.
10. In November 2003, plaintiff came under the care of Dr. John Murray, a dermatologist with Duke University Medical Center. Dr. Murray diagnosed plaintiff as having angioedema, urticaria and impetiginized chronic dermatitis. Dr. Murray continues to treat plaintiff for her skin condition.
11. At defendants' request, plaintiff submitted to an independent medical examination by Dr. Dennis Darcey on June 9, 2004. Dr. Darcey obtained a medical and occupational history from plaintiff, reviewed outside medical records pertaining to plaintiff's treatment for skin conditions and allergy testing, and conducted a physical examination of plaintiff. Based upon Dr. Darcey's evaluation, he was under the impression that plaintiff had (1) intermittent relapsing dermatitis with significant self-excoriation by continued scratching, (2) atopy, (3) chronic pruritus, (4) a history of psoriasis, (5) a history of urticaria and angioedema, and (6) possible chemical exposures in the workplace that may have aggravated her skin condition, but doubtful that the etiology of her current skin condition was related to work. Dr. Darcey also noted there is a good probability plaintiff will experience recurrent episodes or exacerbations of her condition if re-exposed to irritant chemicals in the workplace.
12. Dr. Darcey noted in his evaluation that plaintiff had a documented history of allergies to common environmental antigens (cat, dog, dust, house mites, and many foods). It was Dr. Darcey's opinion that the relatively random temporal intermittent occurrence of plaintiff's flare ups without any known changes at the workplace and stretches of asymptomatic periods make it more difficult to establish a clear causality to workplace exposure. Dr. Darcey further documented that at the time of plaintiff's evaluation, plaintiff had not been working for almost one year, but continues to be severely limited by the pruritic dermatitis. Dr. Darcey suggested that plaintiff seek cognitive, behavioral, or biofeedback strategies to minimize the severe itching sensation.
13. Based upon Dr. Darcey's evaluation, defendants filed a request for hearing on July 6, 2004 alleging that plaintiff's current condition is not related to her employment. By their request for hearing, defendants were seeking relief from their admission of the compensability of and their liability for plaintiff's skin condition.
14. Defendants filed their request for hearing more than one year after defendants filed the Industrial Commission Form 60 by which they admitted the compensability of and their liability for plaintiff's skin condition.
15. Due to her dermatitis, plaintiff's skin itches. Her itching is very distracting to her and interferes with her ability to concentrate. She scratches her skin very frequently. During the hearing before the Deputy Commissioner, plaintiff scratched her skin frequently throughout the time that she testified.
16. Dr. Murray testified that plaintiff would benefit from counseling with Dr. Lefebvre, which should be designed to assist her in coping with her itching. Plaintiff should also be screened for depression. Dr. Murray further testified that plaintiff is unable to work due to her skin condition.
17. Dr. Dennis Darcey, the physician chosen by defendants to provide a second opinion regarding the cause of plaintiff's skin condition, agreed with Dr. Murray's opinion that plaintiff will benefit from treatment by a mental health professional. Dr. Darcey also agreed with Dr. Murray's opinion that plaintiff is unable to return to any work at this time.
18. Defendants' action on July 6, 2004 to rescind the Form 60 or to have the Industrial Commission set aside the prior Award was not filed within one year of defendants' Form 60 filed February 10, 2003 and was not filed within a reasonable time. As a result of her current skin condition, plaintiff continues to be totally incapable of earning wages in any employment.
19. Dr. Darcey's testimony does not constitute newly discovered evidence.
20. Defendants have not produced any new evidence that was not available at the time they admitted the compensability of and their liability for plaintiff's skin condition. Defendants have failed to present any "newly discovered evidence" supporting their action for relief similar to that provided by Rule 60(b) of the North Carolina Rules of Civil Procedure.
21. Defendants have shown a sufficient factual basis upon which defendants reasonably relied in defending plaintiff's claim. Accordingly, defendants' prosecution of the request to rescind the admission of liability and/or to have the Industrial Commission set aside Defendants' Form 60, Employer's Admission of Employee's Right to Compensation, was reasonable, and defendants have not engaged in stubborn, unfounded litigiousness.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Payment of compensation pursuant to N.C. Gen. Stat. § 97-18(b) constitutes an award of the Commission on the question of compensability of and the insurer's liability for the injury for which payment was made. N.C. Gen. Stat. § 97-82(b); Watts v. Hemlock Homes of theHighlands, Inc., 141 N.C. App. 725, 544 S.E.2d 1, disc. reviewdenied, 353 N.C. 398, 547 S.E.2d 431 (2001).
2. N.C. R. Civ. P. 60(b) allows an aggrieved party to move the Court to relieve them from a final judgment, order, or proceeding. However, the Rules of Civil Procedure are not strictly applicable to proceedings under the Workers' Compensation Act. Hogan v. Cone Mills Corp.,315 N.C. 127, 337 S.E.2d 477 (1985). The power to set aside one of its judgments is conferred upon the Industrial Commission by its implied power to administer the Workers' Compensation Act with such judicial authority as is necessary and from the Commission's supervisory power over its judgments. Hogan, 315 N.C. 127, 337 S.E.2d 477
(1985).
3. By analogy to N.C. R. Civ. P. 60(b), an action to set aside a previous order must be filed within a reasonable time and not more than one year after the award or order in question. Plaintiff claims defendants' action to set aside the Form 60 is time barred because it was not filed until more than one year after defendants filed the Form 60 and made payments of disability compensation. However, the Commission is not strictly guided by N.C.R. Civ. P 60(b), but rather the Commission's supervisory power over its judgments. As a matter of equity the undersigned do not give weight to plaintiff's argument that defendants are time barred. Hogan v. Cone Mills Corp., 315 N.C. 127,337 S.E.2d 477 (1985)
4. The Industrial Commission possesses the inherent judicial authority to set aside an award on the grounds of mutual mistake, misrepresentation, fraud, excusable neglect or newly discovered evidence. Hogan v. Cone Mills Corp., 315 N.C. 127, 337 S.E.2d 477
(1985); Moore v. City of Raleigh, 135 N.C. App. 332, 520 S.E.2d 84
(1999).
5. The doctrines of mutual mistake, misrepresentation, and fraud generally apply to agreements between parties and will not provide grounds to set aside an award not based on such an agreement.Higgins v. Michael Powell Builders, 132 N.C. App. 720, 726,515 S.E.2d 17, 21 (1999). Defendants' admission of liability by filing a Form 60 and making payments of compensation was a unilateral act and is not an adoption by the Commission of an agreement between the parties. Therefore, remedies based upon fraud, misrepresentation, undue influence or mutual mistake are not available in this claim where a Form 60 was unilaterally filed by defendants.
6. In order to set aside a judgment on grounds of excusable neglect, the moving party must show that the judgment rendered against him was due to excusable neglect and that he has a meritorious defense.Higgins v. Michael Powell Builders, 132 N.C. App. 720, 515 S.E.2d 17
(1999). What constitutes excusable neglect depends upon the surrounding circumstances and what may be reasonably expected in paying proper attention to their case. Id. In this case, defendants should have been prompted by plaintiff's filing of her Form 18 to investigate other possible causes of plaintiff's injuries and potential pre-existing conditions through the use of interrogatories or other means of collecting pertinent facts of the case.
7. Relief on the grounds of newly discoverable evidence requires that the evidence be new. Defendants claim that Dr. Darcey's opinion on plaintiff's pre-existing skin condition is newly discovered evidence. Although Dr. Darcey's opinion and consultation were obtained after defendants' filing of the Form 60, Dr. Darcy based his opinion on facts that were reasonably discoverable with due diligence at all times by defendants prior to the Award. Evidence of plaintiff's pre-existing skin condition was discoverable with due diligence by defendants prior to defendants' filing of a Form 60. Therefore, plaintiff's pre-existing skin condition and Dr. Darcey's opinion were not newly discovered evidence within the meaning of the Workers' Compensation Act.Higgins v. Michael Powell Builders, 132 N.C. App. 720, 515 S.E.2d 17
(1999). Otherwise parties will attempt to set aside an Award or Judgment of the Commission by obtaining new doctors with new opinions until they find a doctor that renders an opinion more favorable their party; there would never be finality of an Award.
8. Plaintiff is entitled to continued payment of compensation for total disability at the rate of $395.33 per week until she returns to work or until further Order of the Commission allowing suspension or termination of compensation for total disability. N.C. Gen. Stat. §97-29.
9. Plaintiff is entitled to payment of all medical expenses incurred for treatment of her skin condition, including expenses incurred for future treatment by Dr. John Murray, her authorized treating physician, and Mark Lefebvre, Ph. D. N.C. Gen. Stat. § 97-25.
10. An assessment of attorney fees pursuant to N.C. Gen. Stat. §97-88.1 is in the discretion of the Industrial Commission. In determining whether a workers' compensation hearing has been defended without reasonable ground, the Industrial Commission must look to the evidence introduced at the hearing; the test is not whether the defense prevails, but whether it is based in reason rather than in stubborn, unfounded litigiousness. Ruggery v. North Carolina Dept. ofCorrections, 135 N.C. App 270, 520 S.E. 2d 77, (1999). Defendants' prosecution of the request to rescind the admission of liability and/or to have the Industrial Commission set aside Defendants' Form 60, Employer's Admission of Employee's Right to Compensation, was based upon a sufficient legal and factual basis and does not constitute stubborn, unfounded litigiousness. N.C. Gen. Stat. § 97-88.1; Sparks v. MountainBreeze Restaurant, 55 N.C. App. 663, 665, 286 S.E.2d 575, 576 (1982).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall continue paying plaintiff compensation for total disability at the rate of $395.33 per week until plaintiff returns to work or until further order of the Industrial Commission allowing suspension or termination of compensation for total disability.
2. Defendants shall pay all reasonably necessary medical expenses incurred by plaintiff for treatment of her occupational disease, including treatment by Dr. Murray and Mark Lefebvre, Ph. D.
3. An attorney fee is approved for plaintiff's counsel in the amount of twenty-five percent (25%) of the disability benefits due plaintiff. Hereafter, defendants shall direct every fourth check due plaintiff to counsel for plaintiff.
4. Defendants shall pay the costs due to the Industrial Commission. Defendants shall also pay and expert witness fee of $400.00 to Dr. Murray and expert witness fee of $400.00 to Dr. Darcey.
This the ___ day of June, 2006.
 S/
 BUCK LATTIMORE
 CHAIRMAN
CONCURRING:
S/
DIANNE C. SELLERS
COMMISSIONER
S/
THOMAS J. BOLCH
COMMISSIONER