***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin, and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Griffin, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and the subject matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties.
4. The carrier on the risk for defendant in this claim was Liberty Mutual Insurance Company.
5. Plaintiff alleges to have sustained an injury by accident on November 19, 2008.
6. An employment relationship existed between the employee and employer on November 19, 2008.
7. The employee's average weekly wage is $797.04, yielding a compensation rate of $531.39.
8. Plaintiff filed a Form 33 Request for Hearing on June 16, 2009, citing that "Defendants have denied back surgery via peer review recommended by authorized treating physician in an accepted claim."
9. Defendants filed a Form 33 Request for Hearing on June 16, 2009 citing that "Investigation leads Defendants to question the nature and extent of plaintiff's alleged injury, including causation."
10. Defendants filed a Form 33R on June 16, 2009 citing that "surgery was not authorized due to failure of treating physician to respond to pre-certification program."
11. Defendants filed a Motion for Expedited Hearing and to Dispense with Mediation on June 16, 2009. *Page 3 
12. A telephone conference was held on June 17, 2009, and a follow-up on July 1, 2009 with Deputy Commissioner Theresa B. Stephenson.
13. An Order was entered by Deputy Commissioner Stephenson on July 7, 2009, indicating that the issue would require a full evidentiary hearing and that the case was referred to Sandra Cortes for a September docket.
14. An Order was entered by Deputy Commissioner John C. Schafer on July 10, 2009 excusing the case from mediated settlement conference.
15. Defendants filed a Motion to Compel on October 1, 2009 to which plaintiff responded on October 9, 2009.
 ***********
The following were submitted to the Deputy Commissioner as:
 EXHIBITS
1. Stipulated Exhibit Number 1, Pre-Trial Agreement.
2. Stipulated Exhibit Number 2, Industrial Commission Forms, Medical Records, Motions and Orders of the Commission, Discovery Responses.
3. Stipulated Exhibit Number 3, Defendants' Reply to Plaintiff's Response to Motion to Compel.
4. Plaintiff's Exhibit Number 1, Picture of Defendant-Employer's Garage Drawn by Plaintiff.
5. Plaintiff's Exhibit Number 2, Allen's Crossroads Volunteer Fire Department Incident Reports.
6. Defendants' Exhibit Number 1, Still Photographs taken from Plaintiff's MySpace Page. *Page 4 
 ***********
The following were received into evidence as:
 DEPOSITIONS
1. Oral deposition of Leo R. Spector, M.D., taken on December 21, 2009 with Exhibit Number 1 attached to the deposition transcript.
2. Oral deposition of Jeffrey Wetmore taken on January 6, 2010.
3. Oral deposition of Sean Barber taken on January 6, 2010 with Exhibits numbered 1, 2, 3 and 4 attached to the deposition transcript.
 *********** ISSUES TO BE DETERMINED
1. Whether plaintiff is entitled to ongoing temporary total disability benefits under N.C. Gen. Stat. § 97-29?
2. Whether defendants' filing of the Form 60 constituted an award of the Commission?
3. Whether, by executing the Form 60 and paying compensation pursuant thereto, defendants admitted the compensability of and liability for plaintiff's injury, and the award may be enforced pursuant to N.C. Gen. Stat. § 97-87?
4. Should the Form 60 filed by defendants be vacated and/or set aside?
5. Whether defendants' Form 33 should be construed as a Form 24 Application to Terminate plaintiff's benefits?
6. Whether plaintiff is entitled to the microdiscectomy at L4-L5 as recommended by his authorized treating physician, Dr. Spector, as well as any medical treatment deemed necessary and appropriate by said physician? *Page 5 
7. Whether plaintiff is entitled to an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 for defendants' unfounded litigiousness?
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 23 years old. Plaintiff completed the eighth grade and obtained his GED at Cornerstone Christian College.
2. Prior to his employment with defendant-employer, plaintiff worked in grading, equipment operation, welding, piping, painting, plumbing, and other types of manual labor. He also worked as a volunteer fireman. In February of 2008, plaintiff attempted to join the Charlotte Mecklenburg Fire Department by taking the written examination.
3. In April or May of 2008, plaintiff began working in the truck shop for defendant-employer as a mechanic helper. His job duties included changing tires on trailers, performing maintenance on trailers, and working on equipment. In the performance of these duties, plaintiff lifted items weighing from 10 pounds to over 100 pounds throughout his shift, including items such as truck tires, and performed some welding tasks. Plaintiff underwent a pre-employment physical during which he reported a history of back pain. Defendant-Employer cleared plaintiff to work after completion of the physical.
4. On November 19, 2008, plaintiff met with his supervisors to discuss an incident in which two broken hinges were found wrapped in his work shirt outside the security fence that surrounded defendant-employer's property. Plaintiff denied taking the scrap metal. He became *Page 6 
angry and advised his supervisors that he might quit his job with defendant-employer in the future when he obtained a job with the Charlotte Mecklenburg Fire Department.
5. After the meeting on November 19, 2008, plaintiff went to the mechanic shop to begin his work shift. While working under a truck checking an air line, the soap in the air line sprayed plaintiff in his face and eyes, blinding him. Plaintiff climbed out from under the truck, and as he attempted to walk to the eyewash station, he tripped over some spotlights lying on the ground, which caused his right leg to come out from under him. Plaintiff then fell, landing on his right side on the concrete.
6. Jeff Wetmore, plaintiff's co-worker, was working in the mechanic shop at the time of plaintiff's fall. Mr. Wetmore heard the commotion and went to plaintiff's aid, locating Sean Barber, defendant-employer's First Aid person, and a personal friend of plaintiff. When Mr. Wetmore located Mr. Barber, he was just outside of the door to the mechanic shop. Plaintiff indicated that his left hip and leg were hurting. Mr. Barber administered eyewash and attempted to keep plaintiff calm. Mr. Barber then called an ambulance, which transported plaintiff to the hospital.
7. At the emergency room, x-rays were taken of plaintiff's left knee and lumbar spine. Plaintiff was diagnosed with a neck sprain, a back sprain, and a knee sprain. He was prescribed Percocet and discharged with instructions to follow-up with OrthoCarolina.
8. On November 21, 2008, plaintiff presented to OrthoCarolina where he reported a twist and fall injury at work on November 19, 2008, when he tripped and fell on ceiling lights which were lying on the floor. Based upon his physical examination and reported symptoms, Alvin Haymond, PA-C wrote plaintiff completely out of work until December 5, 2008. *Page 7 
9. Defendant-Employer conducted an investigation of the November 19, 2008 accident. As part of their investigation, defendant-employer took statements from plaintiff, Mr. Wetmore, and Mr. Barber. In his statement, Mr. Wetmore reported that he heard plaintiff scream and that he heard banging sounds. Mr. Wetmore further reported that, when he came around the corner, he saw plaintiff on the floor, and that he requested assistance from Mr. Barber, who was a First Aid person for defendant-employer. Mr. Barber stated that he saw plaintiff lying on some lights, and that plaintiff requested that he remove a light from underneath his back. Mr. Barber further stated that plaintiff indicated that his back, knee, and eyes hurt. Mr. Barber advised defendant-employer that he administered eyewash and comforted plaintiff as they waited for the ambulance. Mr. Barber also took a number of photographs pursuant to defendant-employer's policy, and called plaintiff's parents. After completing their investigation, defendants filed a Form 60 on December 2, 2008, accepting plaintiff's claim as a compensable injury by accident.
10. On December 4, 2008, plaintiff began physical therapy. On December 15, 2008, plaintiff reported to the therapist that he was wrestling around with a friend and "bent back up and could not straighten back up for 20 minutes."
11. In the middle of December of 2008, plaintiff learned that he did not pass the written examination for the Charlotte Mecklenburg Fire Department.
12. On December 30, 2008, plaintiff returned to Mr. Haymond at OrthoCarolina and reported that his symptoms were worse despite undergoing a course of physical therapy. He also reported weakness in his left leg. Mr. Haymond recommended continuing physical therapy and ordered an MRI scan of the lumbar spine, with a follow-up appointment with Dr. Vandernoord to discuss the MRI results and possible treatment options. *Page 8 
13. On January 6, 2009, plaintiff presented to Dr. Leo Spector at OrthoCarolina. Dr. Spector performed a physical examination and reviewed the MRI scan of plaintiff's lumbar spine. Dr. Spector diagnosed left L4-L5 herniated nucleus pulposus with left L5 radiculopathy and referred plaintiff for a left L5 selective nerve root block. He indicated that, if plaintiff's symptoms did not improve, he would likely require surgical intervention.
14. On January 22, 2009, plaintiff returned to Dr. Spector with chief complaints of low back pain and left lower extremity pain. Plaintiff had a positive seated straight leg raise test on the left side. Plaintiff indicated that he wished to proceed with surgery, having reviewed the risks and benefits thereof. Dr. Spector wrote plaintiff out of work until re-evaluation.
15. On February 17, 2009, plaintiff underwent his first nerve root block.
16. On February 19, 2009, the insurance adjuster assigned to plaintiff's claim sent a letter to Dr. Spector indicating that a utilization review had been completed for the requested surgery. A peer review practitioner was unable to determine whether the requested procedure was medically necessary due to several factors.
17. On March 4, 2009, plaintiff reported approximately 24 hours of relief following his first injection. As a result, Dr. Spector ordered a second nerve root block and wrote plaintiff out of work until re-evaluation. Plaintiff underwent a second nerve root block on March 24, 2009.
18. Plaintiff continued to treat with Dr. Spector for his back symptoms. On May 11, 2009, Dr. Spector noted that plaintiff had undergone an extensive course of conservative care, which had not improved plaintiff's symptoms, and that his options would be to rate and release plaintiff or move forward with surgery. Dr. Spector anticipated that plaintiff would be able to *Page 9 
return to work without restrictions in approximately two to six weeks postoperatively with a rating. Dr. Spector wrote plaintiff out of work until re-evaluation.
19. On May 29, 2009, a letter was sent to Dr. Spector by defendant-carrier indicating that the utilization review had been completed, and that there was an adverse determination as some of the indications for discectomy had not been met.
20. In August of 2007, plaintiff was riding in a golf cart that collided with a pick up truck. As a result of the collision, plaintiff sustained a laceration to his scalp and suffered pain in his neck and low back. Plaintiff treated with a chiropractor for 10 visits for his neck and low back pain.
21. Dr. Spector opined that the trip and fall and the twisting of the back involved in the November 19, 2008 accident caused plaintiff's injury. Dr. Spector based his opinion on the fact that plaintiff provided a consistent description of the accident to the emergency room physician, to Mr. Haymond at OrthoCarolina, and to him. He also noted that the type of symptoms plaintiff reported were consistent with his diagnosed condition. Dr. Spector further noted that plaintiff had a spinal contusion upon examination at OrthoCarolina very soon after the accident. When questioned about the 2007 golf cart accident, Dr. Spector testified that the occurrence of that accident and the subsequent chiropractic treatment plaintiff received would not change his opinion about the cause of plaintiff's current injury. Based upon a review of all of the competent credible medical evidence of record, the Full Commission finds that plaintiff's November 19, 2008 accident caused the back condition for which plaintiff has been treated by OrthoCarolina and Dr. Spector.
22. Dr. Spector reviewed the peer review denial of the recommended surgery and disputed its findings. Contrary to the peer review report, Dr. Spector noted that plaintiff had *Page 10 
positive straight-leg raise tests on two occasions. Additionally, plaintiff had weakness and pain in his dorisflexors.
23. Dr. Spector needs to re-evaluate plaintiff and possibly perform a diagnostic injection to determine whether plaintiff is still a surgical candidate. Dr. Spector recommended, and the Commission finds, that plaintiff should obtain a second opinion from Dr. Eric Laxer regarding surgery. The Full Commission finds that the medical treatment recommended by Dr. Spector is reasonably necessary to effect a cure, provide relief, or lessen the period of plaintiff's disability.
24. As a result of his compensable injury, Dr. Spector has not released plaintiff to return to any employment. Dr. Spector anticipates returning plaintiff to work after he has been re-evaluated and has completed the appropriate course of treatment, which may include surgery.
25. In his post-hearing deposition, Mr. Wetmore testified that he did not see the accident, but heard what "sounded like running into garbage cans." After hearing this, Mr. Wetmore went to see what was happening, and then went for assistance after he saw plaintiff on the ground. When questioned about whether he allegedly stated to defendant-employer at some point that "the accident was staged" by plaintiff, he replied, "I'm going to invoke my Fifth Right Amendment. I refuse to answer that one on the grounds it may tend to incriminate me."
26. On March 25, 2009, Mr. Barber went to see George Meyers, General Manager, who had not spoken to him since plaintiff's accident. Mr. Barber agreed to prepare a written statement about what he had observed plaintiff doing in the months following his accident. Mr. Barber wrote in his statement that he observed plaintiff riding four-wheel vehicles and motorcycles on several occasions following the accident. Mr. Barber did not provide any information to contradict plaintiff's description of the November 19, 2008 accident. *Page 11 
27. Dr. Spector testified that plaintiff was capable of engaging in activities such as riding four-wheelers and inner tubes, and wrestling with friends after the accident so long as his symptoms were not increased by such activity.
28. From the time of the November 19, 2008 accident, Mr. Meyers did not believe plaintiff was being truthful. Mr. Meyers admitted that he made disparaging remarks about plaintiff and the November 19, 2008 accident to other employees of the company. Despite Mr. Meyers' opinion regarding the validity of plaintiff's description of the accident, defendants accepted plaintiff's claim as a compensable injury by accident after conducting interviews with witnesses and plaintiff, and reviewing photographs of plaintiff and the scene taken immediately following plaintiff's fall in the mechanic shop. None of the defense witnesses actually saw plaintiff when he fell in the mechanic shop. None of the defense witnesses offered any competent credible testimony to establish that plaintiff "staged" the November 19, 2008 accident. Defendants have attempted to set aide the Form 60 based upon Mr. Meyers' personal opinion and beliefs about plaintiff, rather than on any competent credible evidence. Thus, defendants have neither proved their allegations that the Form 60 was based on fraud, misrepresentation, mutual mistake or undue influence, nor have they presented any evidence justifying an order setting aside the Form 60.
29. Defendants' defense of this matter was not based on unfounded litigiousness and was reasonable.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 12 
1. On November 19, 2008, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. On December 2, 2008, defendants entered into a Form 60 agreeing that plaintiff is entitled to compensation for his back and knee. "A Form 60 properly executed by the employer or someone acting on his behalf is an `award' within the meaning of section 97-87."Calhoun v. Wayne Dennis Heating Air Conditioning,129 N.C. App. 794, 501 S.E.2d 346 (1998), review dismissed,350 N.C. 92, 532 S.E.2d 524 (1999). An award of the Commission may only be set aside on the grounds of mutual mistake, misrepresentation, or fraud. Hogan v. Cone Mills Corp.,315 N.C. 127, 138, 337 S.E.2d 477, 483 (1985). Defendants have neither proved their allegations that the Form 60 was based on fraud, misrepresentation, mutual mistake or undue influence, nor have they presented any evidence justifying an order setting aside the Form 60.
3. An employee may meet his burden of proving disability in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Product Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). In this case, plaintiff has satisfied prong one with competent medical evidence of his inability to perform any work as a result of his compensable November 19, 2008 injury. *Page 13 
4. Defendants have not defended this matter unreasonably. Thus, no award of attorney fees will be made to pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved herein, defendants shall continue to pay plaintiff temporary total disability benefits at the weekly compensation rate of $531.39 until plaintiff returns to work or until further order of the Commission.
2. Defendants shall pay the medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury, including, but not limited to a second opinion evaluation with Dr. Laxer, when bills for the same have been submitted according to proper Industrial Commission procedure.
3. It is hereby ordered that Dr. Spector shall be plaintiff's authorized treating physician. Defendants shall authorize all reasonably related medical treatment as recommended by Dr. Spector.
4. A reasonable attorney's fee of 25% of the ongoing compensation due plaintiff under Paragraph 1 of this award is approved for plaintiff's counsel and shall be paid by defendants as follows: plaintiff's counsel shall be paid directly every fourth check due plaintiff.
5. Defendants shall pay the costs.
This the 14th day of March, 2011.
 S/___________________ *Page 14 
LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ DANNY LEE McDONALD COMMISSIONER *Page 1